1

2

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael P. Kahn
mkahn@akingump.com
One Bryant Park
New York, NY 10036
Tel: (212) 872-1000
Fax: (212) 872-1002

3

4

5

6

7

Romeao Jennings (SBN 281568)
rjennings@akingump.com
4 Park Plaza
Suite 1900
Irvine, CA 92614
Tel: (949) 885-4100
Fax: (949) 885-4101

8

9

*Attorney for Plaintiffs 3M Company and 3M
Innovative Properties Company*

10

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

13

14

15

16

17

18

19

20

21

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>        Plaintiffs,<br><br><br>        v.<br><br><br>PHOENIX AUTOMOTIVE REFINISHING CO., LTD. and K2 CONCEPTS,<br><br>        Defendants. | Case No. 5:17-cv-649<br><br>**COMPLAINT FOR PATENT, COPYRIGHT AND TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively, "3M" or "Plaintiffs"), for their Complaint against Defendants Phoenix Automotive Refinishing Co., Ltd. and K2 Concepts (collectively, "Defendants"), by their attorneys, allege as follows:

## INTRODUCTION

1.     3M is the leading innovator of products improving the preparation, consumption, and cleanup of paint and other liquids used in spray guns.     3M's innovations include its paint preparation system, marketed as the 3M™ PPS™ Paint Preparation System.  3M's PPS™ product, among other things, includes a disposable liner and lid with a built-in filter that improves and simplifies the mixing, use, and cleanup required when painting with a gravity-fed spray gun.  The United States Patent and Trademark Office has recognized 3M's innovations, and has issued a number of patents covering various aspects of 3M's PPS™ technology, including U.S. Patent Nos. 6,820,824 (the "'824 Patent"), 7,374,111 (the "'111 Patent"), 8,002,200 (the "'200 Patent"), 8,424,780 (the "'780 Patent"), 8,628,026 (the "'026 Patent"), 8,955,770 (the "'770 Patent"), and 9,211,553 (the "'553 Patent") (collectively the "Patents-in-Suit"). 3M's PPS trademark is registered with the United States Patent and Trademark Office (U.S. Reg. Nos. 4,156,991 and 2,861,036) (collectively the "PPS Marks").  U.S. Reg. No. 2,861,036 is incontestable pursuant to 15 U.S.C § 1065.

2.     Upon information and belief, Defendant Phoenix Automotive Refinishing Co. ("Phoenix") is now manufacturing, using, selling, offering for sale, and/or importing

into the United States lids and liners that use 3M's patented technology in direct competition with 3M. Phoenix markets its products as direct replacements to 3M's PPS™ lids and liners, and has even used copyrighted 3M photos and the PPS Marks in its marketing materials.

3.      Upon information and belief, Defendant K2 Concepts ("K2") is now using, offering for sale, and/or selling Phoenix lids and liners that use 3M's patented technology in direct competition with 3M. K2 markets and sells rebranded Phoenix products as "K2 Cups" through its online website, www.k2shoponline.com/product-p/k2-cups.htm, and web forum, www.k2forums.com. K2's owner, James "Jim" Urbano, in an online YouTube video, describes K2 Cups as a direct replacement to 3M's PPS™ system, and states that the only difference between the two products is the color of the lids. *See* www.youtube.com/watch?v=9z49dSJJ36s.

4.      This is an action for patent, copyright, and trademark infringement, and false designation of origin under the laws of the United States, 35 U.S.C. §§ 271, 281–285, 17 U.S.C. §§ 501-513, and 15 U.S.C. §§ 1114 and 1125. 3M brings this action to stop Defendants' infringing activities and to recover damages suffered by 3M due to Defendants' conduct. Defendants' conduct will irreparably harm 3M, which has devoted significant resources to its technology, intellectual property, commercial products, and brand. Thus, 3M also seeks preliminary and permanent injunctive relief against Defendants.

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT

## THE PARTIES

5.     Plaintiff 3M Company is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business at 3M Center, St. Paul, Minnesota 55133.

6.     Plaintiff 3M Innovative Properties Company ("3M IPC") is a wholly-owned subsidiary of 3M Company with its principal place of business at 3M Center, St. Paul, Minnesota 55133.

7.     On information and belief, Defendant Phoenix Automotive Refinishing Co., Ltd. is a Chinese company having its principal place of business at Room 1010, Building 1, Tianyi International Building, 599 Huzhou Street, Gongshu District, Hangzhou, Zhejiang, China.

8.     On information and belief, Defendant K2 Concepts is a California company having its principal place of business at 871 West 4th Street, Suite F, Beaumont, CA 92223.

## JURISDICTION AND VENUE

9.     This action arises under the patent laws of the United States, including 35 U.S.C. § 271, the copyright laws of the United States, including 17 U.S.C. § 501, and the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

10.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121.

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT

11.   This Court has personal jurisdiction over Phoenix under Cal. Code Civ. Proc. § 410.10 and the due process clause of the U.S. Constitution because Phoenix transacts business in California and has otherwise committed acts of infringement of one or more claims of the Patents-in-Suit in and beyond California causing injury to 3M in California.   Phoenix has continuous and systematic contacts with the state of California, including intentionally importing its products into California, and directing its products for sale in the state of California.  Phoenix maintains extensive relationships with distributors and end users (such as automobile body shops and their employers, including K2) in the state of California to deliberately cause the sale, offer for sale, and use of its products in the State of California.  The accused Phoenix lids and liners for use in 3M's PPS™ system are among the products that Phoenix deliberately causes to be imported, sold, offered for sale, and used in the State of California, and Phoenix makes use of 3M's well known and famous PPS Marks in connection with the sale of its infringing products in California and elsewhere.

12.   This Court has personal jurisdiction over K2 because it is registered under the laws of the State of California and also because it has a primary place of business in the State of California.

13.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(a) and (b).

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

**3M'S AWARD-WINNING PPS™ PRODUCT**

14.     In 1995, 3M engineers recognized that paint mixing, filtering, and spray gun loading processes were inefficient, messy, and time consuming, and resulted in significant amounts of solvent for post-use cleaning.  At the time, painters typically mixed paint using a disposable paint mixing container.  Once mixed, the paint was poured through a disposable filter into a paint container connected to the spray gun.

15.     In conventional gravity-fed spray guns, the paint container was typically screwed into the top of the spray gun via a threaded connector.  Once painting was complete, the painter was required to clean both the gun and the residual paint in the paint container before continuing on to the next color or liquid (such as clear coat) to prevent contamination.  This process was time-consuming and resulted in the use of significant amounts of cleaning solvent.

16.     With those deficiencies in mind, 3M engineers set about to develop a paint mixing and deployment system that (1) reduced the costs associated with mixing and filtering, (2) minimized the cleaning of components that were contaminated with paint, and (3) reduced the time and labor required to prepare, use, and subsequently clean up the spray gun.  3M's efforts culminated in its PPS™ product.

17.     In addition to the spray gun itself, 3M's PPS™ product includes various components, including a fluid reservoir, a collapsible liner, a removable lid (with built-in filter), and a removable collar.  These components are depicted in the figure below.

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT



**FIGURE 1**

18.   One innovation of the PPS™ product is that it added a disposable, collapsible liner and corresponding lid.  With this new feature, painters are able to prepare paint directly in the liner, without having to transfer the paint into the fluid container.  Moreover, once painting is complete, the painter can simply discard the collapsible liner and connected lid.  Because any residual paint is contained within the lid and liner, less cleaning solvent (and time) is required to clean the gun after use.

19.   In addition to the investments 3M made in developing the PPS™ product and its corresponding intellectual property, 3M has made significant investment in industry education – sending 3M employees into collision repair centers across the country to teach the PPS™ process, and to communicate its benefits.

20.   To support use of 3M's PPS™ products by the growing range of painters, 3M has distributed over one million machined stainless steel adapters (usually at no cost

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

to the painters) that enable painters to connect 3M's PPS™ system to hundreds of different models of spray guns.  3M's primary revenue stream from the PPS™ product comes from its repeat sales of disposable liners and lids.

21.    The industry and individual users have praised 3M's PPS™ system and acknowledged its considerable contributions with numerous awards and recognitions.  Users have praised the benefits provided to their businesses and the environment (through reduced solvent usage).  Exemplary global awards and recognitions include:

- "Product of the Year 2001" from the trade publications "*Bodyshop Magazine*" and "*Autotrade*" (United Kingdom);

- "Best New Product" award for the body and paints section at *Galeria de Innovacion Motortec 2001* (Spain);

- "Innovation Award" at a leading trade show organized by the trade publication "*Automotive Refinisher*" (South Africa);

- 2001 Grands Prix trophy in the Garage Equipment section of the premier auto trade exhibition, *Equip Auto* (France);

- Selected by *Design Council* as one of its 2001 "Innovation Stories" (United Kingdom);

- 2002 Horners Award for Plastics, for outstanding achievements in the plastics industry; and

- 2006 Society of Automotive Engineers (SAE) "Environmental Excellence in Transportation Award" in the service, maintenance, and logistics category.

**DEFENDANTS' COPYING OF 3M'S PPS™ PRODUCT**

22.    In 2016, Phoenix began advertising its copies of 3M™ PPS™ lids and liners on its Facebook page.  On March 30, 2016, Phoenix posted an advertisement, describing a "Paint System" for sale.  *See* www.facebook.com/phoenixautorefinish.  The post stated that for $13.50 buyers could purchase 50 lids, 50 liners, and 10 caps. Included in the advertisement were various part numbers, which included item number "24025."

23.    On July 29, 2016, Phoenix posted a similar advertisement to its Facebook page with the same underlying background image.  Above the image, the post stated, "New Paint System, PPS Just US$13.50/box, include 50pcs lid + 50pcs linner [sic] + 10pcs caps."

24.    Images of the March 30, 2016 and July 29, 2016 advertisements are provided below.



**FIGURE 2**                    **FIGURE 3**

25.     The background image used in the two pictures above was taken directly from copyright protected 3M marketing literature, and is a professionally shot image of 3M retiree David Gzik painting in a body shop on the 3M campus.

26.     On October 21, 2016, the United States Copyright Office issued Registration Number VA 2-020-468 (the "'468 Registration"), covering the image described above.  A copy of the Registration Certificate is attached as Exhibit A to this Complaint.

27.     The original copyrighted image of the '468 Registration appears as Figure 4, below.



**FIGURE 4**

28.     As shown above in Figure 3, Phoenix markets the Accused Products using 3M's PPS Marks, thereby infringing 3M's registered trademarks.  Additional examples of Phoenix's infringing conduct are provided in Figure 5, below:

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

1

2

3

4

5

6

7

8

9

10

11

12



13

**FIGURE 5**

14          29.     In July and August of 2016, Phoenix began uploading multiple videos of an

15   "AMERICAN customer" demonstrating Phoenix's copy of the 3M™ PPS™ lids and

16   liners.  The customer in the videos is James Urbano—owner of K2 Concepts.  In the

17   videos, Mr. Urbano is seen adding paint into a Phoenix liner, inserting the liner into a

18   3M fluid cup, attaching the Phoenix lid (with built-in 125 micron filter), and attaching

19   the combined paint pot to an adapter attached to a spray gun.  Once the system is

20   connected, Mr. Urbano demonstrates painting objects in his shop.

21

30.    Screenshots of Mr. Urbano's videos demonstrating the system with the Phoenix lids and liners are provided below.  Figure 5 depicts Mr. Urbano inserting a Phoenix liner into a 3M branded fluid reservoir.  Figure 6 depicts the liner and reservoir with paint poured into the Phoenix liner.  Figure 7 depicts Mr. Urbano attaching the Phoenix lid onto the liner and reservoir.  Figure 8 depicts Mr. Urbano connecting the combined paint reservoir system to a spray gun.  Figure 9 depicts the combined system spraying paint.  Figure 10 depicts the collapsed liner and combined lid being removed from the outer paint reservoir.





**FIGURE 6**              **FIGURE 7**              **FIGURE 8**

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

  

**FIGURE 9**          **FIGURE 10**          **FIGURE 11**

31.    On May 15, 2016, K2 uploaded a YouTube video, entitled "K2 Cups Release."   https://www.youtube.com/watch?v=9z49dSJJ36s.   In the post, Mr. Urbano describes K2 cups as a "price effective cost alternative to PPS system."  In addition, Mr. Urbano provides a side-by-side comparison of the K2 Cups, with original 3M lids and liners.  In that comparison, Mr. Urbano states that the only difference between the 3M™ PPS™ products and K2 cups is that "the originals are blue, [and] the K2 cups are clear, but still 125 micron [filter]."

32.    In the video, Mr. Urbano offers K2 cups for sale, "shipped anywhere in the United States," and directs viewers to his website, www.k2shoponline.com.  He states that K2 had purchased 12,000 units, and that half were already sold.

33.    On information and belief, U.S. Importation records confirm a shipment of 12,000 units of the Accused Product (240 boxes with 50 sets each) from Phoenix to K2.

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

1   The transaction record below states that on April 28, 2016, K2 Concepts received 240

2   boxes of the Accused Products from Phoenix, bearing item number 24025.   The

3   Accused Products arrived at the port in Long Beach, California.

| Date | Consignee Declared | Shipper Declared | Notify Address | Port of Arrival | Quantity Unit | Quantity | Country of Origin | Port of Departure | Container | Description | Marks & Numbers |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/28/2016 | K2 CONCEPTS | PHENIX AUTOMOTIVE REFINISHING | 67625 EAST PALM CANYON, SUITE C3, CATHEDRAL CITY CA 92234 TE 9516751303 | LONG BEACH,CA | CTN | 240 | CHINA | NINGPO,NING BO,CHINA MAINLAND | TTNU9143952 | PLASIC CUP | LDHBATCH:PHX16SC0 28ITEM:24025CONTEN TS:LIDS &LINERS 125 MICRONSQUANTITY:5 0SETSLIDS:50 LINERS:50CAPS:10 |

**FIGURE 12**

8   34.   In September 2016, K2 posted on its forum that it had sold out of the

9   original 12,000 units, but that it would "order the next batch as soon as we finish

10   moving the shop."   *See*   http://k2forums.com/discussion/6372/pps-cup-bulk-orders-

11   edited/p6.



**FIGURE 13**

16   35.   K2   cups   are   available   for   purchase   on   K2's   website   at

17   https://www.k2shoponline.com/product-p/k2-cups.htm.   In the product description, K2

18   states that "K2 Cups are a solution to expensive PPS lids and liners."   The K2 Cup lids

19   include a 125 micron filter that is "recommended for water borne paint or primer

20   applications."

21

36.     K2's website also includes an image of the K2 Cups.  That image is reproduced below in Figure 14.  Behind the sample lid and liner is a box, bearing item number "24025"—the same product number Phoenix uses to designate its lids and liners.  On information and belief, K2 purchased its rebranded K2 cups from Phoenix.

37.     The K2 cups appear functionally identical to 3M™ PPS™ lids and liners.  Comparison photos are provided below.  Compare Defendants' product (Figure 14), and 3M's PPS™ lid and liner (Figure 15).




**FIGURE 14**                    **FIGURE 15**

38.     Defendants' lids and liners are marketed as a direct replacement for 3M™ PPS™ lids and liners.  The lids and liners sold by Defendants are special-purpose components designed for specific use in 3M's patented technology.   Moreover, Defendants' lids and liners are not a "staple article of commerce" that are suitable for use in ways that do not infringe 3M's patents.

## DEFENDANTS' KNOWLEDGE OF 3M's PPS™ PATENTS

***K2's Knowledge***

39.     In May 2016, K2 was involved in discussions with members of its forum regarding the purchase of its lids and liners that are compatible with the 3M™ PPS™ product. The communications occurred in a thread entitled "PPS Cup Bulk Orders **EDITED**."   In that thread, a user requested Phoenix's contact information to directly purchase lids and liners, because he missed out on purchasing from K2's bulk order.     In response, K2 explicitly acknowledges 3M's patent rights.   *See* http://k2forums.com/discussion/comment/83002#Comment_83002.



**FIGURE 16**

40.     On information and belief, and based on the foregoing, K2 had knowledge of 3M's Patents-in-Suit at least as early as May 2016.

41.     At a minimum, K2 deliberately shielded itself from knowledge of the specifics of the Patents-in-Suit, despite evidence suggesting that there were "3M patent issues" with its K2 Cups.

*Phoenix's Knowledge*

42. In October and November of 2016, Phoenix attended the Specialty Equipment Market Association ("SEMA") trade show in Las Vegas, Nevada regarding aftermarket automotive products.

43. A representative from 3M attended the SEMA trade show.

44. During the trade show, the 3M representative observed a Phoenix representative presenting a sample of the Accused Products to a potential customer / visitor.

45. Despite Phoenix's actions to the contrary, when 3M's representative asked the Phoenix representative about Phoenix lids and liners, the Phoenix representative responded that it did not sell those products in the United States, because 3M had patents in the United States.

46. After being pressed by the 3M representative, the Phoenix representative ultimately revealed a sample of an infringing product from under the display and showed it to the 3M representative.

47. On information and belief, and based on the foregoing, Phoenix had knowledge at least as of October 2016 that 3M owns patents covering 3M's lids and liners. On information and belief, therefore, Phoenix had knowledge of 3M's Patents-in-Suit at least as early as October 2016.

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

48.     At a minimum, Phoenix deliberately shielded itself from knowledge of the Patents-in-Suit, despite evidence suggesting that its products infringed 3M's patents in the United States.

## THE PATENTS-IN-SUIT

### U.S. Patent No. 6,820,824

49.     On November 23, 2004, a true and correct copy of the '824 Patent, entitled "Apparatus for Spraying Liquids, Disposal Containers and Liners Suitable for Use Therewith," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy is attached as Exhibit B to this Complaint.

50.     All right, title, and interest in and to the '824 Patent have been assigned to 3M IPC, which is the sole owner of the '824 Patent.

51.     3M Company is the exclusive licensee of the '824 Patent.

52.     The '824 Patent is currently in full force and effect.

### U.S. Patent No. 7,374,111

53.     On May 20, 2008, a true and correct copy of the '111 Patent, entitled "Apparatus for Spraying Liquids, and Disposable Containers and Liners Suitable for Use Therewith," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy is attached as Exhibit C to this Complaint.

54.     In 2006, the '111 Patent underwent reexamination, and on May 20, 2008, the United States Patent and Trademark Office issued an *Inter Partes* Reexamination Certificate confirming the patentability of all claims.

55.     All right, title, and interest in and to the '111 Patent have been assigned to 3M IPC, which is the sole owner of the '111 Patent.

56.     3M Company is the exclusive licensee of the '111 Patent.

57.     The '111 Patent is currently in full force and effect.

**U.S. Patent No. 8,002,200**

58.     On August 23, 2001, a true and correct copy of the '200 Patent, entitled "Apparatus for Spraying Liquids, and Disposable Containers and Liners Suitable for Use Therewith," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy is attached as Exhibit D to this Complaint.

59.     All right, title, and interest in and to the '200 Patent have been assigned to 3M IPC, which is the sole owner of the '200 Patent.

60.     3M Company is the exclusive licensee of the '200 Patent.

61.     The '200 Patent is currently in full force and effect.

**U.S. Patent No. 8,424,780**

62.     On April 13, 2013, a true and correct copy of the '780 Patent, entitled "Apparatus for Spraying Liquids, and Adapters and Liquid Reservoirs Suitable for Use Therewith," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy is attached as Exhibit E to this Complaint.

63.     In 2014, the '780 Patent underwent reexamination, and on February 23, 2016, the Patent Trials and Appeals Board of the United States Patent and Trademark

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT

1    Office issued a final written decision confirming the patentability of claims 9-11, 13-22,

2    and 25-28.

3         64.    All right, title, and interest in and to the '780 Patent have been assigned to

4    3M IPC, which is the sole owner of the '780 Patent.

5         65.    3M Company is the exclusive licensee of the '780 Patent.

6         66.    The '780 Patent is currently in full force and effect.

7    ***U.S. Patent No. 8,628,026***

8         67.    On January 14, 2014, a true and correct copy of the '026 Patent, entitled

9    "Apparatus for Spraying Liquids, and Disposable Containers and Liners Suitable for

10   Use Therewith," was duly and legally issued by the United States Patent and Trademark

11   Office.  A true and correct copy is attached as Exhibit F to this Complaint.

12        68.    In 2015, the Patent Trial and Appeal Board of the United States Patent and

13   Trademark Office issued a decision denying institution of *inter partes* review.  In doing

14   so, the Board confirmed the patentability of all challenged claims.

15        69.    All right, title, and interest in and to the '026 Patent have been assigned to

16   3M IPC, which is the sole owner of the '026 Patent.

17        70.    3M Company is the exclusive licensee of the '026 Patent.

18        71.    The '026 Patent is currently in full force and effect.

19   ***U.S. Patent No. 8,955,770***

20        72.    On February 17, 2015, a true and correct copy of the '770 Patent, entitled

21   "Apparatus for Spraying Liquids, and Adapters and Liquid Reservoirs Suitable for Use

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

Therewith" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy is attached as Exhibit G to this Complaint.

73.    All right, title, and interest in and to the '770 Patent have been assigned to 3M IPC, which is the sole owner of the '770 Patent.

74.    3M Company is the exclusive licensee of the '770 Patent.

75.    The '770 Patent is currently in full force and effect.

***U.S. Patent No. 9,211,553***

76.    On December 15, 2015, a true and correct copy of the '553 Patent, entitled "Apparatus for Spraying Liquids, and Adapters and Liquid Reservoirs Suitable for Use Therewith" was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy is attached as Exhibit H to this Complaint.

77.    All right, title, and interest in and to the '533 Patent have been assigned to 3M IPC, which is the sole owner of the '533 Patent.

78.    3M Company is the exclusive licensee of the '533 Patent.

79.    The '533 Patent is currently in full force and effect.

80.    Each of the Patents-in-Suit relates generally to apparatus and methods for spraying liquids, such as spray guns, and liquid reservoirs for such apparatus, including disposable containers and liners.

## THE PPS MARKS

81.    On July 6, 2004, the United States Patent and Trademark Office issued Registration No. 2,861,036 (the "'036 Registration") for PPS in connection with spray

guns comprising cups and liners.  A copy of the certificate of registration is attached as Exhibit I to this Complaint.  The '036 Registration is incontestable pursuant to 15 U.S.C. § 1065.

82.     On June 12, 2012, the United States Patent and Trademark Office issued Registration No. 4,156,991 (the "'991 Registration") for PPS in connection with paint spray equipment, including cups and collars, and lids and liners.  A copy of the certificate of registration is attached as Exhibit J to this Complaint.

83.     The trademark "PPS" is a strong, highly distinctive trademark that has been used prominently and continuously since at least as early as September 2, 2003 in connection with 3M's paint preparation products.

84.     Upon information and belief, the public has come to recognize and to understand that the PPS Marks distinguish and identify 3M's paint preparation products with 3M.

85.     All right, title, and interest in and to the PPS Marks is vested in 3M Company, which is the sole owner of the PPS Marks.

## FIRST CLAIM FOR RELIEF
### (*Defendants' Infringement of the '824 Patent*)

86.     3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

87.     Upon information and belief, K2 has directly infringed and continues to infringe, one or more claims of the '824 Patent, including at least claim 1 of the '824

Patent under 35 U.S.C. § 271(a). Specifically, K2 without authority has used, and continues to use, in the United States the apparatus of claim 1 of the '824 Patent, with Phoenix liners and removable lids.

88. Claim 1 of the '824 Patent recites:

> 1. A spray gun comprising: a fluid reservoir; a removable, collapsible, liner which, prior to adding a fluid to the liner has a shape corresponding to, and is a close fit within, the interior of the reservoir, a removable lid located in an opening in the reservoir, a removable collar which secures the lid to the reservoir at the periphery of the opening, and a spray nozzle for dispensing fluid from within the liner during operation of the gun, and in which the combination of reservoir and liner has a fill opening which is inverted when connect to the spray gun in normal operation with fluid passing from within the liner to the spray nozzle.

89. K2 has used a spray gun comprising a fluid reservoir, collapsible liner, removable collar, and a spray nozzle, as depicted in Figure 10, above.

90. The Phoenix and K2 liners are specifically manufactured to fit within 3M's fluid reservoirs.

91. During use, the combination of the reservoir, liner, and removable lid are inverted while connected to the spray gun in normal operation, with fluid passing from within the liner to the spray nozzle, as depicted in Figure 10, above.

92. Thus, K2 uses a system that includes every element of at least claim 1 of the '824 Patent.

93. Upon information and belief, Defendants have actively and knowingly induced and continue to actively and knowingly induce their respective customers to

infringe one or more claims of the '824 Patent, including at least claim 1 of the '824 Patent under 35 U.S.C. § 271(b) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners. Defendants' marketing materials and videos describe these products as especially adapted to be used with other 3M™ PPS™ components, thus inducing their customers to directly infringe at least claim 1 of the '824 Patent.

94.    Upon information and belief, Defendants have actively and knowingly contributed to the infringement of, and continue to actively and knowingly contribute to the infringement of one or more claims of the '824 Patent, including at least claim 1 of the '824 Patent under 35 U.S.C. § 271(c) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners. The Phoenix and K2 lids and liners are especially adapted to be used with other 3M™ PPS™ components in an infringing manner, and are not a staple article of commerce suitable for substantial non-infringing uses.

95.    Defendants' acts of infringement have been without permission, consent, authorization, or license of 3M.

96.    Upon information and belief, Defendants had full knowledge of the '824 Patent before receiving notice of this complaint. Further, by the time Defendants received notice of this complaint, their inducement of, and contribution to, others' infringement has been with full knowledge of the '824 Patent, with the intention of actively inducing and contributing to the direct infringement by others in the United States.

97.    Defendants' knowledge of the '824 Patent and decision to copy the covered technology prior to the patent's expiration in blatant disregard for 3M's patent rights constitutes egregious conduct demonstrating Defendants' willful infringement.

98.    Upon information and belief, Defendants will continue to infringe the '824 Patent unless and until it is enjoined by this Court.

99.    Defendants have caused and will continue to cause 3M injury and damage by infringing the '824 Patent.  3M will suffer further injury unless and until Defendants are enjoined from infringing the '824 Patent.

### SECOND CLAIM FOR RELIEF
### (*Defendants' Infringement of the '111 Patent*)

100.    3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

101.    Upon information and belief, K2 has directly infringed and continues to infringe, one or more claims of the '111 Patent, including at least claim 1 of the '111 Patent under 35 U.S.C. § 271(a).  Specifically, K2 without authority has performed, and continues to perform, in the United States the method of claim 1 of the '111 Patent, using Phoenix liners and removable lids.

102.    Claim 1 of the '111 Patent recites:

1. A method of preparing a gravity fed liquid spraying apparatus comprising the steps of:
   a) providing a liner having a base and sidewalls, or a sidewall, and an opening and being capable of standing unsupported on the base with the side walls extended and upright;

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

b) placing the liner in an outer container, wherein the container having a base and an open end at a top edge of the container;

c) with the container standing upright on the base and the liner positioned in the container with the sidewall or sidewalls of the liner extended upward from the base of the liner, adding liquid to the liner through the opening;

d) attaching to the combination of the outer container and liner a lid which covers the opening of the container and the liner has an outlet, the combination of liner, outer container and lid comprising a reservoir;

e) connecting a spray gun to the outlet of the lid;

f) inverting the combination of the spray gun and reservoir so that the reservoir is above the spray gun;

g) removing the liner from the outer container together with the lid, wherein the lid engages the liner so that the liner can be lifted from the outer container together with the lid.

103.   K2 has provided a Phoenix liner, which has a circular base, a sidewall, and an opening.  As depicted in Figure 12, the liner is capable of standing unsupported on its base, with the side wall extended and upright.

104.   As depicted in Figures 6 and 7, K2 has placed the Phoenix liner into a 3M container and added a liquid into the liner through the opening.

105.   As depicted in Figure 8, K2 has attached a lid to the combination of the liner and outer container.  The lid covers the opening of the container and the liner, and has an outlet, which is connected to the spray gun, as depicted in Figure 9.

106.   As depicted in Figure 10, during regular use, the spray gun and reservoir is inverted, so that the reservoir is above the spray gun.

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

107. K2 removes the liner together with the connected lid, as depicted in Figure 11.

108. Thus, K2 performs each element of at least claim 1 of the '111 Patent.

109. Upon information and belief, Defendants have actively and knowingly induced and continue to actively and knowingly induce their respective customers to infringe one or more claims of the '111 Patent, including at least claim 1 of the '111 Patent under 35 U.S.C. § 271(b) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners. Defendants' marketing materials and videos describe these products as especially adapted to be used with other 3M PPS™ components, thus inducing their customers to directly infringe at least claim 1 of the '111 Patent.

110. Upon information and belief, Defendants have actively and knowingly contributed to the infringement of, and continue to actively and knowingly contribute to the infringement of one or more claims of the '111 Patent, including at least claim 1 of the '111 Patent under 35 U.S.C. § 271(c) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners. The Phoenix and K2 lids and liners are especially adapted to be used with other 3M™ PPS™ components in an infringing manner, and are not a staple article of commerce suitable for substantial non-infringing uses.

111. Defendants' acts of infringement have been without permission, consent, authorization, or license of 3M.

112.   Upon information and belief, Defendants had full knowledge of the '111 Patent before receiving notice of this complaint.   Further, by the time Defendants received notice of this complaint, their inducement of, and contribution to, others' infringement has been with full knowledge of the '111 Patent, with the intention of actively inducing and contributing to the direct infringement by others in the United States.

113.   Defendants' knowledge of the '111 Patent and decision to copy the covered technology prior to the patent's expiration in blatant disregard for 3M's patent rights constitutes egregious conduct demonstrating Defendants' willful infringement.

114.   Upon information and belief, Defendants will continue to infringe the '111 Patent unless and until it is enjoined by this Court.

115.   Defendants have caused and will continue to cause 3M injury and damage by infringing the '111 Patent.   3M will suffer further injury unless and until Defendants are enjoined from infringing the '111 Patent.

### THIRD CLAIM FOR RELIEF
### (*Defendants' Infringement of the '200 Patent*)

116.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

117.   Upon information and belief, K2 has directly infringed and continues to infringe, one or more claims of the '200 Patent, including at least claim 1 of the '200 Patent under 35 U.S.C. § 271(a).   Specifically, K2 without authority has performed, and

continues to perform, in the United States the method of claim 1 of the '200 Patent, using Phoenix liners and removable lids.

118. Claim 1 of the '200 Patent recites:

1. A method of preparing a paint spray gun, the method comprising:

(a) providing a paint spray gun, a liner that is open at one end and has a rim at its open end, and a lid, the lid having an outwardly extending rim, a filter, and an outlet;

(b) adding paint to the liner while the liner is upright;

(c) securing the lid and the liner to create a reservoir for the paint wherein the rim of the lid sits on top of the rim of the liner when the liner is secured to the liner;

(d) inverting the spray gun and attaching it to the outlet of the lid;

(e) placing the spray gun in an upright position with the liner and the lid above the spray gun; and

(f) activating the spray gun to withdraw paint from the liner and through the filter and the outlet so as to spray the paint from the spray gun.

119. K2 has provided a spray gun, liner, and lid, as depicted in Figure 10. The Phoenix liners have an open end, and a rim on their open end, as depicted in Figure 6. Similarly, the lids have an outwardly extending rim and an outlet through which liquids can flow to the spray gun, as depicted in Figure 7. The Phoenix lids also contain a 125 micron filter.

120. K2 has added paint to the liner while upright, as depicted in Figure 7.

121. K2 has secured Phoenix lids to Phoenix liners, as depicted in Figure 8.

122. K2 has inverted and attached the spray gun to the outlet of the lid, as depicted in Figure 9.

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT

123.   K2 has placed the gun upright, and activated a spray gun to spray paint through the filter and the outlet, as depicted in Figure 10.

124.   Thus, K2 has performed each element of at least claim 1 of the '200 Patent.

125.   Upon information and belief, Defendants have actively and knowingly induced and continue to actively and knowingly induce their respective customers to infringe one or more claims of the '111 Patent, including at least claim 1 of the '200 Patent under 35 U.S.C. § 271(b) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners.  Defendants' marketing materials and videos describe these products as especially adapted to be used with other 3M™ PPS™ components, thus inducing their customers to directly infringe at least claim 1 of the '200 Patent.

126.   Upon information and belief, Defendants have actively and knowingly contributed to the infringement of, and continue to actively and knowingly contribute to the infringement of one or more claims of the '200 Patent, including at least claim 1 of the '200 Patent under 35 U.S.C. § 271(c) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners.  The Phoenix and K2 lids and liners are especially adapted to be used with other 3M™ PPS™ components in an infringing manner, and are not a staple article of commerce suitable for substantial non-infringing uses.

127.   Defendants' acts of infringement have been without permission, consent, authorization, or license of 3M.

128.   Upon information and belief, Defendants had full knowledge of the '200 Patent before receiving notice of this complaint.   Further, by the time Defendants received notice of this complaint, their inducement of, and contribution to, others' infringement has been with full knowledge of the '200 Patent, with the intention of actively inducing and contributing to the direct infringement by others in the United States.

129.   Defendants' knowledge of the '200 Patent and decision to copy the covered technology prior to the patent's expiration in blatant disregard for 3M's patent rights constitutes egregious conduct demonstrating Defendants' willful infringement.

130.   Upon information and belief, Defendants will continue to infringe the '200 Patent unless and until it is enjoined by this Court.

131.   Defendants have caused and will continue to cause 3M injury and damage by infringing the '200 Patent.   3M will suffer further injury unless and until Defendants are enjoined from infringing the '200 Patent.

### FOURTH CLAIM FOR RELIEF
**(*Defendants' Infringement of the '780 Patent*)**

132.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

133.   Upon information and belief, K2 has directly infringed and continues to infringe, one or more claims of the '780 Patent, including at least claim 13 of the '780 Patent under 35 U.S.C. § 271(a).   Specifically, K2 without authority has used, and

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

continues to use, in the United States the apparatus of claim 13 of the '780 Patent, with Phoenix liners and removable lids.

134.   Claim 13 of the '780 Patent is dependent upon claim 12.  The two claims recite:

> 12. A kit for use with a gravity-fed spray gun with a conventional screw thread paint pot attachment point comprising:
>
> a liquid reservoir comprising a connector tube having a fluid outlet;
>
> an adapter comprising,
>
> > at a first end a first connector for attachment to the fluid outlet, and
> >
> > at a second end, a second connector shaped to fit the attachment point of the gravity-fed spray gun
> >
> > the first connector connecting the liquid reservoir in a manner different than the conventional screw threading of the second connector to adapt the connector of the connector tube of the liquid reservoir to the conventional attachment point of the spray-gun, such that the adapter will remain attached to the body upon removal of the liquid reservoir from the first connector.
>
> 13. The kit of claim 12 wherein the liquid reservoir comprises a collapsible liner having an open end and a lid for closing the open end, the fluid outlet being located in the lid.

135.   K2 has used a kit for use with a gravity-fed spray gun, including a liquid reservoir comprised of a Phoenix lid and liner.  The lid has a connector tube having a fluid outlet, and the liner that is collapsible, as depicted in Figure 10.

136. The kit further has an adapter connected to the spray gun via a conventional screw threading. The opposite end of the adapter has a different connector for connecting the reservoir to the adapter.

137. Thus K2 uses a kit that includes every limitation of at least claim 13 of the '780 Patent.

138. Upon information and belief, Defendants have actively and knowingly induced and continue to actively and knowingly induce their respective customers to infringe one or more claims of the '780 Patent, including at least claim 13 of the '780 Patent under 35 U.S.C. § 271(b) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners. Defendants' marketing materials and videos describe these products as especially adapted to be used with other 3M PPS™ components, thus inducing their customers to directly infringe at least claim 13 of the '780 Patent.

139. Upon information and belief, Defendants have actively and knowingly contributed to the infringement of, and continue to actively and knowingly contribute to the infringement of one or more claims of the '780 Patent, including at least claim 13 of the '780 Patent under 35 U.S.C. § 271(c) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners. The Phoenix and K2 lids and liners are especially adapted to be used with other 3M™ PPS™ components in an infringing manner, and are not a staple article of commerce suitable for substantial non-infringing uses.

140.   Defendants' acts of infringement have been without permission, consent, authorization, or license of 3M.

141.   Upon information and belief, Defendants had full knowledge of the '780 Patent before receiving notice of this complaint.   Further, by the time Defendants received notice of this complaint, their inducement of, and contribution to, others' infringement has been with full knowledge of the '780 Patent, with the intention of actively inducing and contributing to the direct infringement by others in the United States.

142.   Defendants' knowledge of the '780 Patent and decision to copy the covered technology prior to the patent's expiration in blatant disregard for 3M's patent rights constitutes egregious conduct demonstrating Defendants' willful infringement.

143.   Upon information and belief, Defendants will continue to infringe the '780 Patent unless and until it is enjoined by this Court.

144.   Defendants have caused and will continue to cause 3M injury and damage by infringing the '780 Patent.   3M will suffer further injury unless and until Defendants are enjoined from infringing the '780 Patent.

## FIFTH CLAIM FOR RELIEF
### (*Defendants' Infringement of the '026 Patent*)

145.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT

146.   Upon information and belief, K2 has directly infringed and continues to infringe, one or more claims of the '026 Patent, including at least claim 1 of the '026 Patent under 35 U.S.C. § 271(a).  Specifically, K2 without authority has performed, and continues to perform, in the United States the method of claim 1 of the '026 Patent, using Phoenix liners and removable lids.

147.   Claim 1 of the '026 Patent recites:

> 1.  A method of preparing a batch of paint, the method comprising:
>
> (a) providing a receptacle having an open top end;
>
> (b) providing a liner having an open end, a base, and a rim at its open end that corresponds in shape to the open top end of the receptacle, the liner being shaped to fit into the open top end of the receptacle so that a batch of paint can be added to the liner without coming into contact with the receptacle,
>
> (c) placing the liner into the open top end of the receptacle;
>
> (d) adding a first volume of paint into the open end of the liner, and
>
> (e) fitting a lid on the open end of the liner to create a reservoir containing a batch of paint, wherein the liner is collapsible as paint is withdrawn from within the liner, and wherein the liner is removable from the receptacle together with the lid.

148.   K2 has provided a 3M receptacle having an open top end, and a Phoenix liner having an open end, base, and rim that fits into the 3M receptacle, as depicted in Figure 6.

149.   K2 has placed liners into the open end of the receptacle, as depicted in Figure 6.

150.   K2 has added paint into the open end of a liner, as depicted in Figure 7.

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT

1    151.   K2 has fit a Phoenix lid onto the open end of the Phoenix liner, as depicted

2  in Figure 8.  As the paint is withdrawn from the liner, it collapses, as depicted in Figure

3  10.

4    152.   Thus, K2 has performed each element of at least claim 1 of the '026 Patent.

5    153.   Upon information and belief, Defendants have actively and knowingly

6  induced and continue to actively and knowingly induce their respective customers to

7  infringe one or more claims of the '026 Patent, including at least claim 1 of the '026

8  Patent under 35 U.S.C. § 271(b) by offering for sale, selling, and/or importing Phoenix

9  and K2 branded lids and liners.  Defendants' marketing materials and videos describe

10  these products as especially adapted to be used with other 3M PPS™ components, thus

11  inducing their customers to directly infringe at least claim 1 of the '026 Patent.

12    154.   Upon information and belief, Defendants have actively and knowingly

13  contributed to the infringement of, and continue to actively and knowingly contribute to

14  the infringement of one or more claims of the '026 Patent, including at least claim 1 of

15  the '026 Patent under 35 U.S.C. § 271(c) by offering for sale, selling, and/or importing

16  Phoenix and K2 branded lids and liners.  The Phoenix and K2 lids and liners are

17  especially adapted to be used with other 3M™ PPS™ components in an infringing

18  manner, and are not a staple article of commerce suitable for substantial non-infringing

19  uses.

20    155.   Defendants' acts of infringement have been without permission, consent,

21  authorization, or license of 3M.

156.   Upon information and belief, Defendants had full knowledge of the '026 Patent before receiving notice of this complaint.   Further, by the time Defendants received notice of this complaint, their inducement of, and contribution to, others' infringement has been with full knowledge of the '026 Patent, with the intention of actively inducing and contributing to the direct infringement by others in the United States.

157.   Defendants' knowledge of the '026 Patent and decision to copy the covered technology prior to the patent's expiration in blatant disregard for 3M's patent rights constitutes egregious conduct demonstrating Defendants' willful infringement.

158.   Upon information and belief, Defendants will continue to infringe the '026 Patent unless and until it is enjoined by this Court.

159.   Defendants have caused and will continue to cause 3M injury and damage by infringing the '026 Patent.  3M will suffer further injury unless and until Defendants are enjoined from infringing the '026 Patent.

### SIXTH CLAIM FOR RELIEF
#### (*Defendants' Infringement of the '770 Patent*)

160.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

161.   Upon information and belief, K2 has directly infringed and continues to infringe, one or more claims of the '770 Patent, including at least claim 16 of the '770 Patent under 35 U.S.C. § 271(a).   Specifically, K2 without authority has used, and

continues to use, in the United States the apparatus of claim 16 of the '770 Patent, with Phoenix liners and removable lids.

162.   Claim 16 of the '770 Patent recites:

16. An apparatus for spraying a liquid, the apparatus comprising

a gravity fed spray gun comprising

a body comprising a top portion, a rear portion, and a front portion;

a handle extending from the rear portion of the body;

an attachment point located at the top portion of the body; and

a spray nozzle located at the front portion of the body; and

a fluid reservoir configured to contain a fluid to be sprayed through the spray nozzle, the fluid reservoir comprising

a container comprising a liner that is self-supporting but also collapsible, the container comprising an open end and;

a lid for cooperative engagement with the open end of the container, the lid comprising a connector to couple the fluid reservoir to the attachment point of the spray gun and an aperture through which the fluid can flow from the fluid reservoir to the spray nozzle in use; and

a filter positioned to filter the fluid before reaching the spray nozzle.

163.   K2 has used an apparatus comprising gravity fed spray gun comprising a body, handle, attachment point, and spray nozzle, as depicted in Figure 10.

164.   The apparatus further comprises a fluid reservoir comprising a self-supporting, but collapsible Phoenix liner, as depicted in Figures 10 and 13. The fluid reservoir further comprises a Phoenix lid that includes a connector to connect to the

spray gun and an aperture through which fluid can flow to the spray gun.   The lid contains a 125 micron filter, and is depicted in Figure 14.

165.   Thus, K2 has used a system that includes every element of at least claim 16 of the '770 Patent.

166.   Upon information and belief, Defendants have actively and knowingly induced and continue to actively and knowingly induce their respective customers to infringe one or more claims of the '770 Patent, including at least claim 16 of the '824 Patent under 35 U.S.C. § 271(b) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners.  Defendants' marketing materials and videos describe these products as especially adapted to be used with other 3M PPS™ components, thus inducing their customers to directly infringe at least claim 16 of the '770 Patent.

167.   Upon information and belief, Defendants have actively and knowingly contributed to the infringement of, and continue to actively and knowingly contribute to the infringement of one or more claims of the '770 Patent, including at least claim 16 of the '770 Patent under 35 U.S.C. § 271(c) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners.   The Phoenix and K2 lids and liners are especially adapted to be used with other 3M™ PPS™ components in an infringing manner, and are not a staple article of commerce suitable for substantial non-infringing uses.

168.   Defendants' acts of infringement have been without permission, consent, authorization, or license of 3M.

169.   Upon information and belief, Defendants had full knowledge of the '770 Patent before receiving notice of this complaint.   Further, by the time Defendants received notice of this complaint, their inducement of, and contribution to, others' infringement has been with full knowledge of the '770 Patent, with the intention of actively inducing and contributing to the direct infringement by others in the United States.

170.   Defendants' knowledge of the '770 Patent and decision to copy the covered technology prior to the patent's expiration in blatant disregard for 3M's patent rights constitutes egregious conduct demonstrating Defendants' willful infringement.

171.   Upon information and belief, Defendants will continue to infringe the '770 Patent unless and until it is enjoined by this Court.

172.   Defendants have caused and will continue to cause 3M injury and damage by infringing the '770 Patent.   3M will suffer further injury unless and until Defendants are enjoined from infringing the '770 Patent.

## SEVENTH CLAIM FOR RELIEF
### (*Defendants' Infringement of the '553 Patent*)

173.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

174.   Upon information and belief, Defendants have infringed and continue to infringe, one or more claims of the '553 Patent, including at least claim 1 of the '553 Patent under 35 U.S.C. § 271(a).   Specifically, Defendants without authority have made,

used, sold, offered for sale, and/or imported, and continue to make, use, sell, offer for sale, and/or import into the United States the apparatus of claim 1 of the '553 Patent.

175.   Claim 1 of the '553 Patent recites:

> 1. A spray gun paint reservoir comprising:
>   a liner comprising:
>     a base;
>     a sidewall;
>     an open end;
>     a rim at the open end; and
>     an internal surface;
>     the liner being self-supporting, but also being collapsible in use as a paint is withdrawn from the reservoir; and
>   a lid that is a push-fit in the open end of the liner, the lid comprising:
>     an outwardly-extending rim adapted to sit on top of the liner rim;
>     a central aperture from which extends a connector tube adapted to connect the reservoir to a compatible spray gun, the central aperture and connector tube forming an outlet for paint from the reservoir; and
>     a filter mesh covering the central aperture.

176.   Defendants' products include a liner comprising a base, sidewall, open end with rim, and an internal surface, as depicted in Figure 14.  The liner is self-supporting, but is collapsible as paint is withdrawn, as depicted in Figure 10.

177.   Defendants' products also include a lid designed to push fit into their liners, as depicted in Figure 14.  The lid includes an outwardly extending rim, which sits on top of Defendants' liners, as depicted in Figure 8.  The lid comprises a central tube aperture that connects to a spray gun, and acts as an outlet for the paint from the reservoir, as

depicted in Figures 9 and 10. The lid also includes a 125 micron filter that covers the central tube aperture.

178. Thus, Defendants' products meet all of the limitations of at least claim 1 of the '553 Patent.

179. Upon information and belief, Defendants have actively and knowingly induced and continue to actively and knowingly induce their respective customers to infringe one or more claims of the '553 Patent, including at least claim 1 of the '553 Patent under 35 U.S.C. § 271(b) by offering for sale, selling, and/or importing Phoenix and K2 branded lids and liners. Defendants' marketing materials and videos describe these products as especially adapted to be used with other 3M™ PPS™ components, thus inducing their customers to directly infringe at least claim 1 of the '553 Patent.

180. Defendants' acts of infringement have been without permission, consent, authorization, or license of 3M.

181. Upon information and belief, Defendants had full knowledge of the '553 Patent before receiving notice of this complaint. Further, by the time Defendants received notice of this complaint, their inducement of, and contribution to, others' infringement has been with full knowledge of the '553 Patent, with the intention of actively inducing and contributing to the direct infringement by others in the United States.

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

182.   Defendants' knowledge of the '553 Patent and decision to copy the covered technology prior to the patent's expiration in blatant disregard for 3M's patent rights constitutes egregious conduct demonstrating Defendants' willful infringement.

183.   Upon information and belief, Defendants will continue to infringe the '553 Patent unless and until it is enjoined by this Court.

184.   Defendants have caused and will continue to cause 3M injury and damage by infringing the '553 Patent.  3M will suffer further injury unless and until Defendants are enjoined from infringing the '553 Patent.

### EIGHTH CLAIM FOR RELIEF
#### (*Phoenix's Copyright Infringement of the '468 Registration*)

185.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

186.   Upon information and belief, Phoenix has infringed 3M's copyright, including by reproducing, distributing, and preparing derivative works of 3M's photograph without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 *et seq.* and 501.

187.   Phoenix's acts of infringement were willful, in disregard of, and with indifference to the rights of 3M.

188.   As a direct and proximate result of the infringement by Phoenix, 3M is entitled to damages in amounts to be proven at trial, and which are not currently ascertainable.

189.   Alternatively, 3M is entitled to the maximum statutory damages in the amount of $150,000.00, or such other amounts as may be proper under 17 U.S.C. § 504(c).

190.   As a direct and proximate result of the foregoing acts and conduct, 3M has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Phoenix will continue to infringe 3M's rights in its copyrighted work.  3M is entitled to preliminary and permanent injunctive relief.

## NINTH CLAIM FOR RELIEF
### (*Phoenix's Trademark Infringement of the '036 Registration*)

191.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

192.   Upon information and belief, Phoenix's use in interstate commerce of confusingly similar reproductions, copies, or colorable imitations of 3M's federally registered PPS mark depicted in the '036 Registration in connection with the sale, offering for sale, distribution, or advertising of, or in connection with, Phoenix's goods is likely to cause confusion, or to cause mistake, or to deceive, by creating the false and misleading impression that Phoenix's goods are manufactured and distributed by 3M, or are associated or connected with 3M, or are sponsored by, endorsed by, or approved by 3M.

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

193.   Upon information and belief, Phoenix's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in Plaintiffs' trademarked PPS mark for which 3M has no adequate remedy at law.

194.   Upon information and belief, Phoenix's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's federally registered PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

195.   Upon information and belief, Phoenix has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover Phoenix's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

## TENTH CLAIM FOR RELIEF
### (*Phoenix's False Designation of Origin by Use of the '036 Registration*)

196.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

197.   Upon information and belief, Phoenix's use in interstate commerce of the PPS mark depicted in the '036 Registration in connection with the Accused Product, has caused and/or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Phoenix with 3M, or as to the origin, sponsorship, or approval of Phoenix's goods, services, or commercial activities by 3M.

198.   Upon information and belief, Phoenix's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in the PPS mark for which 3M has no adequate remedy at law.

199.   Upon information and belief, Phoenix's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

200.   Upon information and belief, Phoenix has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover Phoenix's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1116, 1117, 1118, and 1125.

## ELEVENTH CLAIM FOR RELIEF
### (*Phoenix's Trademark Infringement of the '991 Registration*)

201.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

202.   Upon information and belief, Phoenix's use in interstate commerce of confusingly similar reproductions, copies, or colorable imitations of 3M's federally registered PPS mark depicted in the '991 Registration in connection with the sale, offering for sale, distribution, or advertising of, or in connection with, Phoenix's goods is likely to cause confusion, or to cause mistake, or to deceive, by creating the false and misleading impression that Phoenix's goods are manufactured and distributed by 3M, or

are associated or connected with 3M, or are sponsored by, endorsed by, or approved by 3M.

203.   Upon information and belief, Phoenix's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in Plaintiffs' trademarked PPS mark for which 3M has no adequate remedy at law.

204.   Upon information and belief, Phoenix's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's federally registered PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

205.   Upon information and belief, Phoenix has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover Phoenix's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

## TWELFTH CLAIM FOR RELIEF
### (*Phoenix's False Designation of Origin by Use of the '991 Registration*)

206.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

207.   3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT

208.   Upon information and belief, Phoenix's use in interstate commerce of the PPS mark depicted in the '991 Registration in connection with the Accused Product, has caused and/or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Phoenix with 3M, or as to the origin, sponsorship, or approval of Phoenix's goods, services, or commercial activities by 3M.

209.   Upon information and belief, Phoenix's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in the PPS mark for which 3M has no adequate remedy at law.

210.   Upon information and belief, Phoenix's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

211.   Upon information and belief, Phoenix has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover Phoenix's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1116, 1117, 1118, and 1125.

## **PRAYER FOR RELIEF**

WHEREFORE, 3M respectfully prays for judgment as follows:

a) Judgement that defendants have infringed one or more claims of each of the Patents-in-Suit;

b) Judgement that Phoenix has infringed 3M's rights in its copyrighted work;

c) Judgement that Phoenix has infringed 3M's rights in the PPS Marks and falsely designated the origin of the Accused Products;

d) Preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them from further infringement of the Patents-in-Suit, 3M's copyrights, and the PPS Marks;

e) An award to 3M of damages adequate to compensate it for all infringement occurring through the date of judgement, with prejudgment interest, and for any supplemental damages as appropriate and post-judgement interest after that date;

f) An award of enhanced damages and counsel fees for willful infringement as permitted by law;

g) An award to 3M of costs and reasonable attorney fees and costs under 17 U.S.C. § 505;

h) An award of actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages under 15 U.S.C. §§ 1114, 1117, and 1125.

i) An order that all infringing articles in Phoenix's possession, including but not limited to labels, signs, prints, packaging, and advertisements bearing the infringing marks be delivered to an officer of the Court to be destroyed, under 15 U.S.C. § 1118.

j) A finding that this action for infringement is an exceptional case under 35 U.S.C. § 285 and an award of reasonable attorney fees and costs; and

**COMPLAINT FOR PATENT, COPYRIGHT, AND TRADEMARK INFRINGEMENT**

k)  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), 3M hereby demands a trial by jury on all issues so triable.

Dated: April 5, 2017

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: */s/ Romeao Jennings*
Romeao Jennings (SBN 281568)
rjennings@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA 92614
Tel:   949-885-4100
Fax:   949-885-4101

Michael Kahn
mkahn@akingump.com
One Bryant Park
New York, NY
212-872-1000
*Counsel for 3M Company and 3M Innovative Properties Company*