1

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael P. Kahn (admitted *pro hac vice*)

2

One Bryant Park
New York, NY 10036

3

Tel: (212) 872-1000
Fax: (212) 872-1002

4

5

Romeao Jennings (SBN 281568)
4 Park Plaza, Suite 1900
Irvine, CA 92614

6

Tel: (949) 885-4100
Fax: (949) 885-4101

7

*Attorneys for Plaintiffs 3M Company and 3M Innovative Properties Company*

8

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Plaintiffs<br><br>v.<br><br>PHOENIX AUTOMOTIVE REFINISHING CO., LTD. and K2 CONCEPTS,<br><br>Defendants. | Case No. 5:17-cv-649-RSWL-DTB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT PHOENIX AUTOMOTIVE REFINISHING CO., LTD.**<br><br>Concurrently filed with:<br>1. Notice of Motion and Motion for Default Judgment;<br>2. Declaration of Romeao Jennings;<br>3. Declaration of Michael Kahn; and<br>4. [Proposed] Order.<br><br>Hon. Ronald S.W. Lew<br>Hearing Date: March 27, 2018 |

11

12

13

14

15

16

17

18

19

20

21

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................1

II.  STATEMENT OF FACTS.....................................................................1

    A.   3M and Its Intellectual Property....................................................1

    B.   Phoenix and Its Infringement .......................................................2

    C.   This Action and Phoenix's Default ...............................................4

III. 3M HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR ENTERING DEFAULT JUDGMENT ...........................................5

    A.   This Court Has Jurisdiction and Venue is Proper.................................5

    B.   3M Properly Served Defendants ....................................................6

    C.   3M has Satisfied its Rule 55 Requirements ...................................6

IV.  IT IS PROPER FOR THIS COURT TO ENTER DEFAULT JUDGMENT AGAINST DEFENDANT ...........................................6

    A.   Failure to Order Default Judgment Against Defendant Would Result in Great Prejudice to 3M (*Eitel* Factor 1)..................................7

    B.   3M's Complaint States Valid Claims (*Eitel* Factors 2 and 3) ..............8

        1.   Counts 1-7: Patent Infringement (35 U.S.C. § 271) ..................8

        2.   Count 8: Copyright Infringement (17 U.S.C. § 501)...............10

        3.   Counts 9-12: Federal Trademark Infringement and False Designation of Origin (15 U.S.C. §§ 1114 & 1125) ................11

    C.   3M's Decision to Seek Equitable Relief Instead of Substantial Damages Supports Entry of Default Judgment (*Eitel* Factor 4) .........12

    D.   The Material Facts are not Disputed (*Eitel* Factor 5)........................13

    E.   Defendant's Default was not Due to Excusable Neglect (*Eitel* Factor 6)........................................................................................14

i

F.    The Policy Favoring Decision on the Merits Supports Default
Judgment (*Eitel* Factor 7) ..................................................................14

**V.    3M IS ENTITLED TO NOMINAL DAMAGES, A PERMANENT
INJUNCTION, AND ITS REASONABLE ATTORNEY FEES AND
COSTS ...............................................................................................15**

A.    Permanent Injunction .........................................................15

B.    Damages ..............................................................................17

C.    Attorney Fees and Costs.....................................................17

**VI.    CONCLUSION .............................................................................22**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiuppy v. Set Glob. Inc.*,
No. CV 13-07198 DDP, 2015 U.S. Dist. LEXIS 135637 (C.D. Cal. Oct. 5, 2015) .................................................................................................. 20

*Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*,
406 U.S. 706 (1972) ............................................................................... 5

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988) ............................................................ 15

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*,
606 F.3d 612 (9th Cir. 2010) .............................................................. 11

*Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd.*,
No. 14-CV-2307, 2014 U.S. Dist. LEXIS 132169 (C.D. Cal. Sept. 18, 2014) .................................................................................................... 16

*Document Security Sys., Inc. v. Everlight Elecs. Co.*,
No. CV 17-04273 ................................................................................... 9

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ....................................................... 9, 10

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) .....................................................*passim*

*Halo Elecs. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) ........................................................................ 10

*Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prods.*,
2017 U.S. Dist. LEXIS 59970 (C.D. Cal. Apr. 19, 2017) ............. 8, 9, 15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................. 19

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ............................................................ 16

iii

*Kerr Corp. v. Tri Dental, Inc.*,
2013 U.S. Dist. LEXIS 35728 (C.D. Cal. Mar. 11, 2013)..........................7, 12, 13, 14

*Langer v. Elsinore Pioneer Lumber Co.*,
No. 2:14-CV-08293-ODW-PLAx, 2015 U.S. Dist. LEXIS 12015 (C.D. Cal. Jan. 30, 2015) ........................................................................................20

*LG Elecs. Mobile Comm U.S.A., Inc. v. Xiaowen*,
No. 3:16-CV-1162, 2017 U.S. Dist. LEXIS 143409 (S.D. Cal. Sept. 5, 2017) ........................................................................................................20

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
590 F. Supp. 2d 1271 (C.D. Cal. 2008) ...................................................17

*Nat'l Photo Grp., LLC v. Pier Corp.*,
No. 8:13-CV-1165, 2014 U.S. Dist. LEXIS 195663 (C.D. Cal. Mar. 10, 2014) ....................................................................................................*passim*

*PepsiCo, Inc. v. Cal. Sec. Cans*,
238 F. Supp. 2d. 1172 (C.D. Cal. 2002) ............................................12, 13

*Philip Morris USA Inc. v. Banh*,
No. CV 03-4043 GAF, 2005 U.S. Dist. LEXIS 43113 (C.D. Cal. Jan. 14, 2005) ................................................................................................19

*Philip Morris USA Inc. v. Liu*,
489 F. Supp. 2d (C.D. Cal 2002) .............................................................11

*Schwarz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) .....................................................................19

*Sigma Enterprises, LLC v. Alluring Deals LLC*,
No. 8:17-CV-1074 (C.D. Cal. Dec. 15, 2017).........................................20

*Soteria Encryption, LLC v. Lenovo United States, Inc.*,
No. 2:16-CV-7958 (C.D. Cal. Feb. 27, 2017) ..........................................9

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
127 F.3d 821 (9th Cir. 1997) ...................................................................18

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) ...................................................................16

*TC Heartland v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017)..............................................................................5

iv

*Twentieth Century Fox Film Corp. v. Entertainment Dist.*,
   429 F.3d 869 (9th Cir. 2005) ........................................................................ 18

*United Steelworkers of Amer. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ........................................................................ 19

*Warner Bros. Home Entm't, Inc. v. Slaughter*,
   No. 2:13CV-892, 2013 U.S. Dist. LEXIS 156597 (C.D. Cal. Oct. 30,
   2013) .............................................................................................................*passim*

*Wetzel's Pretzels, LLC v. Johnson*,
   797 F. Supp. 2d 1020 (C.D. Cal. 2011) ....................................................... 16

**Statutes**

15 U.S.C. § 1114 ............................................................................................ 11

15 U.S.C. § 1116 ............................................................................................ 15

15 U.S.C. § 1117 ..................................................................................... 13, 18

15 U.S.C. § 1121 .............................................................................................. 5

15 U.S.C. § 1125 ..................................................................................... 11, 18

17 U.S.C. § 501 ................................................................................... 5, 10, 15

17 U.S.C. § 504 ............................................................................................. 12

17 U.S.C. § 505 ..................................................................................... 12, 18

28 U.S.C. § 1331 ............................................................................................. 5

28 U.S.C. § 1338 ............................................................................................. 5

28 U.S.C. § 1391 ............................................................................................. 5

28 U.S.C. § 1400 ............................................................................................. 5

35 U.S.C. § 271 ............................................................................................... 8

35 U.S.C. §§ 284 ........................................................................................... 12

35 U.S.C. § 285 ..................................................................................... 12, 17

Cal. Code. Civ. Proc. § 410.10 ...................................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Cal. Corp. Code § 17708.02 ..................................................................... 21

Servicemembers Civil Relief Act (50 U.S.C. App. § 521) ............................... 6

**Other Authorities**

Fed. R. Civ. P. 4(h)(1)(B) ........................................................................ 6

Red. R. Civ. P. Rule 55 ............................................................................ 6

L.R. 55 ........................................................................................... 19, 20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

## I.   INTRODUCTION

This lawsuit arises from Defendant Phoenix Automotive Refinishing Co., Ltd.'s ("Phoenix") infringement of 3M's patents, copyrights, and trademarks—all related to 3M's award winning paint preparation system, marketed under the PPS™ brand. Instead of creating its own unique products, Phoenix willfully and maliciously chose to copy 3M's patented products.  Going further, Phoenix marketed its copy products using the 3M and PPS registered marks, and even wholesale copied 3M's marketing materials in marketing the copy products.

After waiting months for service under the Hague Service Convention, 3M was able to serve Phoenix's Chief Executive Officer, personally, on November 3, 2017 while he was in attendance at the Specialty Equipment Market Association ("SEMA") show— an automotive specialty products conference in Las Vegas.  Phoenix has failed to answer or otherwise respond, and the Clerk entered Defendant's default on January 8, 2018 (Dkt 26).   Given the egregiousness of Phoenix's conduct, 3M now seeks a default judgment for: (1) a permanent injunction enjoining Phoenix from infringing 3M's intellectual property rights; (2) $1 nominal damages; and (3) attorneys' fees and costs related to this matter.

## II.   STATEMENT OF FACTS

### A.   3M and Its Intellectual Property

3M is the leading innovator of products improving the preparation, consumption, and cleanup of paint and other liquids used in spray guns.  (Dkt 1, Comp'l. ¶ 1.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Relevant to this case, 3M's innovations include its paint preparation system, marketed under its registered PPS™ mark.  (*Id.*) 3M's PPS™ product includes, among other things, a disposable liner and lid with a built-in filter that improves and simplifies the mixing, use, and cleanup required when painting with gravity-fed spray guns.  (*Id.* at ¶ 18.)

3M has made substantial investments in developing the PPS™ product, including its intellectual property and industry education – sending 3M employees into collision repair centers across the country to teach the PPS™ process and to communicate its benefits.  (*Id.* at ¶19.)  The United States Patent and Trademark Office ("USPTO") has recognized 3M's innovations and issued a number of patents covering various aspects of the PPS™ technology, including the seven patents asserted in this action.  (*Id.* at ¶ 1.)  The USPTO has also issued trademarks covering the 3M and PPS marks. (*Id.*)

**B.    Phoenix and Its Infringement**

Phoenix is a Chinese company that sells various automotive parts in the United States and abroad, including the copies of PPS™ lids and liners relevant to this action. (*Id.* at ¶ 7.)  In March 2016, Phoenix began advertising its copies of the PPS™ lids and liners online.  (*Id.* at ¶ 22.)  Phoenix's advertisements included a background image that was taken directly from 3M's copyright-protected marketing literature. (*Id.* at ¶¶ 24-27, Figs. 2-4.)  Moreover, as shown below, Phoenix marketed its knock-off products using 3M's PPS and 3M marks. (*Id.* at ¶ 28, Fig. 5.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**



**FIGURE 5**

Phoenix's products are functionally identical to the patented PPS™ lids and liners. (*Id.* at ¶ 37, Figs. 14-15.)



**FIGURE 14**



**FIGURE 15**

3

In October and November 2016, both 3M and Phoenix attended the SEMA trade show in Las Vegas.  (*Id.* at ¶¶42-43.)   During the show, 3M witnessed Phoenix demonstrating samples of the knock-off products to potential customers.  (*Id.* at 44.) When a 3M representative requested to see a sample of the copied product, Phoenix responded that it did not sell those products in the United States, because 3M had patents covering the technology.  (*Id.* at 45.)   After being pressed by the 3M representative, Phoenix eventually revealed a sample of the infringing product from its display. (*Id.* at 46.)   Despite Phoenix's statement to the contrary, publicly available importation records reveal that Phoenix has sold at least 12,000 units of infringing products into the United States to co-defendant K2 Concepts. (*Id.* at ¶ 33-34.)

### C.   This Action and Phoenix's Default

On April 5, 2017, 3M filed the present action against both Phoenix and one of its US customers, K2 Concepts. (Comp'l., Dkt. 1.)   3M's primary evidence of patent infringement was based on YouTube and Facebook videos depicting K2 Concepts demonstrating the infringing Phoenix products.  (*See, e.g.*, *id.* at Figs. 6-11.)   On April 27, 2017, the court entered a consent judgment as to defendant K2 Concepts, holding that K2 Concepts infringed the asserted patents and enjoining it from future infringement. (Dkt. 18.)

Because Phoenix did not register before doing business in California (as required by law), 3M was required to prepare and serve documents through the Hague Service Convention.  (*See* Dkt. 22.)   As 3M was awaiting service abroad, Phoenix came to the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

United States for the 2017 SEMA conference.  On November 3, 2017, 3M was able to personally serve 3M's CEO at the conference.  (Dkt. 24.)  Phoenix has failed to appear, answer, or otherwise respond to the Complaint, and its time to respond expired on November 27, 2017.  3M filed its Application for Entry of Default Judgment against Phoenix on January 5, 2018 (Dkt. 25), and the Clerk entered default on January 8, 2018. (Dkt. 26.)

## III.  3M HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR ENTERING DEFAULT JUDGMENT

### A.    This Court Has Jurisdiction and Venue is Proper

This Court has subject-matter jurisdiction over the federal patent, trademark, and copyright claims.  15 U.S.C. § 1121; 17 U.S.C. § 501; 28 U.S.C. § 1331 & 1338(a).  The Court has personal jurisdiction over Phoenix under CAL. CODE. CIV. PROC. § 410.10 and the due process clause of the U.S. Constitution because Phoenix transacts business in California and has committed acts of infringement in this District, including the acts that form the basis of 3M's Complaint.  Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(a) & (b).[1]

---

[1] As a foreign defendant, Phoenix may be sued in any district where acts of infringement take place.  *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713-14 (1972).  The Supreme Court's 2017 decision in *TC Heartland v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), holding that § 1400(b) was the sole provision providing venue in patent cases, was expressly limited to domestic corporations.  *See TC Heartland*, 137 S. Ct. 1514 at 1520, n.2.

5

### B.    3M Properly Served Defendants

Phoenix was properly served with the Complaint, summons, and accompanying exhibits on November 3, 2017 in Las Vegas, Nevada through personal service on its officer.  Fed. R. Civ. P. 4(h)(1)(B); *see also* (Dkt 24.)

### C.    3M has Satisfied its Rule 55 Requirements

The Court should exercise its authority to enter default judgment in this case.  3M properly served Phoenix, by its CEO, and yet it has failed to appear or otherwise respond.  Jennings Dec'l, ¶¶ 6-7.  3M has met the procedural requirements for obtaining an Entry of Default (Dkt. 26) and submitting a declaration setting forth the supporting facts regarding the default.  *See* Fed. R. Civ. P. 55; L.R. 55; Jennings Dec'l., ¶¶ 2-10. Moreover, Phoenix is not an infant, an incompetent person, or a person in the military within the meaning of the Servicemembers Civil Relief Act (50 U.S.C. App. § 521). Jennings Dec'l., ¶ 8.

## IV.    IT IS PROPER FOR THIS COURT TO ENTER DEFAULT JUDGMENT AGAINST DEFENDANT

The court may, in its discretion, enter default judgment against a party who fails to plead or otherwise defend a case.  *See* Fed. R. Civ. P. 55.  Seven factors aid the determination of whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In assessing these factors, "the factual allegations of the complaint, except those relating to damages, [are] taken as true." *Nat'l Photo Grp., LLC v. Pier Corp.*, No. 8:13-CV-1165, 2014 U.S. Dist. LEXIS 195663, at *9 (C.D. Cal. Mar. 10, 2014) (internal citations omitted). Here, the *Eitel* factors strongly weigh in 3M's favor.  Accordingly, this Court should enter default judgment against Defendant.

### A.    Failure to Order Default Judgment Against Defendant Would Result in Great Prejudice to 3M (*Eitel* Factor 1)

3M will be prejudiced greatly if default judgment is not entered against Phoenix. Under the first *Eitel* factor, the Court considers the possibility of prejudice to the plaintiff if default judgment were not entered.  *Kerr Corp. v. Tri Dental, Inc.*, 2013 U.S. Dist. LEXIS 35728, at *7 (C.D. Cal. Mar. 11, 2013). Past misconduct and current failure to appear to litigate this case indicate that Defendant is "highly unlikely to correct past misbehavior or otherwise compensate [the plaintiff] without a default judgment by the Court." *Id*.  In such a situation, the "Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered." *Id*. (quoting *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)). This factor also weighs in favor of default judgment where the "Plaintiff has no other means to collect compensation from the Defendant, leaving Plaintiff without a proper remedy absent default judgment." *Warner Bros. Home Entm't, Inc. v. Slaughter*, No. 2:13CV-892, 2013 U.S. Dist. LEXIS 156597, at *6 (C.D. Cal. Oct. 30, 2013).

7

These circumstances are present in this case.  Despite being aware of 3M's patent rights at least as early as October 2016, Phoenix continued to sell its infringing products.  (Comp'l. at ¶ 47.)  Moreover, even after filing suit, Phoenix has continued to ignore 3M and its intellectual property rights, as evidenced by its default in this action. Phoenix's copying is so blatant and so complete that it leaves no room for any possibility that it was done unintentionally. There is no reason to believe Defendants would curtail their infringement unless judgment is entered against them. Without intervention by the Court, 3M is left entirely without a remedy for Phoenix's willful infringement. Accordingly, the first *Eitel* factor weighs in favor of default judgment.

**B.     3M's Complaint States Valid Claims (*Eitel* Factors 2 and 3)**

The second and third *Eitel* factors require the court to assess whether a plaintiff has stated sufficiently each claim for which it seeks to recover. *Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prods.*, 2017 U.S. Dist. LEXIS 59970, at *21 (C.D. Cal. Apr. 19, 2017).   In this case, 3M has stated twelve valid claims for patent, copyright, and trademark infringement, and the second and third *Eitel* factors thus weigh in favor of ordering default judgment against Phoenix.

**1.     Counts 1-7: Patent Infringement (35 U.S.C. § 271)**

Patent infringement occurs when a defendant, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention. . . ."  35 U.S.C. § 271.  To establish a claim for direct infringement under § 271(a), the plaintiff must provide "sufficient factual

8

allegations regarding how an accused product meets each of a claim's limitations." *Document Security Sys., Inc. v. Everlight Elecs. Co*., No. CV 17-04273 JVS(JCGx), at *3 (C.D. Cal. Nov. 16, 2017).  To establish a claim for induced infringement under § 271(b), the plaintiff must show (1) "an actionable direct infringement claim by a third party," (2) "allegations of conduct amounting to inducement," and (3) "allegations of the intent to cause direct infringement."  *Id.* at *5.  "If an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is liable for the resulting actus of infringement by third parties."  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006). Under § 284, courts can enhance damages for willful infringement if the plaintiff can show that the defendant possessed present knowledge of the patent and acted with willful misconduct.  *Soteria Encryption, LLC v. Lenovo United States, Inc.*, No. 2:16-CV-7958, at *5-6 (C.D. Cal. Feb. 27, 2017) (citing *Halo Elecs. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933-34 (2016)).

Here, 3M has sufficiently shown that (1) Phoenix directly infringed one patent (Count 7) through its sale, offer for sale, and importation into the United States, (2) Phoenix induced co-defendant K2 Concepts (and likely others) to infringe all seven asserted patents (Counts 1-7) by creating copycat products and actively marketing them under 3M's trademarked names, and (3) Phoenix acted willfully. Phoenix's products are functionally identical to 3M's patent-protected lids and liners, and were marketed on its website using 3M's trademarks and copyright-protected marketing materials.  (Comp'l.

9

¶¶ 24-28, 37, Figs. 2-5, 14-15.)  Indeed, co-Defendant K2 Concepts states in an online video that the only difference between 3M's products and Phoenix's infringing product is the color.  (*Id*. at ¶ 31.)

3M has met its burden of showing infringement by including detailed screenshots of co-Defendant K2 Concepts demonstrating the use of infringing products purchased from Phoenix.  (Dkt. 1.)  As described in 3M's Complaint, these images depict the elements of at least one claim of each of the seven asserted patents.  (*Id*. at Figs.6-11, ¶¶ 86-184.)  Because Phoenix actively marketed its products as 3M products to be used with the 3M PPS system in an infringing manner, it is also liable for inducement of infringement.  *See DSU Med. Corp.*, 471 F.3d at 1305-06.

Moreover, 3M has sufficiently alleged willful infringement.  Indeed, at the SEMA show in 2016, Phoenix representatives admitted that they knew that the Phoenix knock-off products infringed 3M's United States patents and misrepresented that it did not sell those products in the United States, because 3M had patents in the United States.  (Comp'l. ¶¶ 42-48.)  Given Phoenix's egregious behavior of directly copying 3M's products in an infringing manner (and improperly using 3M's intellectual property to market its copied products), it is liable for willful infringement.  *See Halo Elecs.*, 136 S. Ct. at 1933-34.

### 2.    Count 8: Copyright Infringement (17 U.S.C. § 501)

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of the copyright by the plaintiff [and;] (2) copying by the defendant." *Warner*

*Bros.*, 2013 U.S. Dist. LEXIS 156597, at *7 (quoting *Lamb v. Starks*, 949 F. Supp. 753, 756 (N.D. Cal. 1996)); *see also Nat'l Photo*, 2014 U.S. Dist. LEXIS 195663, at *4 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Registration of a copyright is prima facie evidence of a valid copyright.  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010).

3M has met both elements here, and thus stated a valid claim for copyright infringement. First, 3M registered and received copyright protection for the copied image used in 3M's marketing materials. (Comp'l. ¶ 24-26.)  Second, Defendants have indisputably copied 3M's copyrighted material.   Indeed, Phoenix copied in its entirety 3M's copyrighted photograph from 3M marketing materials and used it to market Phoenix's infringing products.  (*Id.*)

### 3. Counts 9-12: Federal Trademark Infringement and False Designation of Origin (15 U.S.C. §§ 1114 & 1125)

To establish a claim for trademark infringement, a plaintiff must demonstrate that (1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d, 1119, 1122 (C.D. Cal 2002). Similarly, § 1125 prohibits use of words, terms names, symbols or devices that provide a false designation or origin.  15 U.S.C. § 1125.

These elements are satisfied here. First, 3M owns valid and enforceable trademark rights in its registered 3M and PPS marks. (Comp'l. ¶¶ 81-82.)  "Registration of a trademark with the United States Patent and Trademark Office satisfies the

11

threshold requirement that the plaintiff must possess a protectable mark." *Kerr Corp.*, 2013 U.S. Dist. LEXIS 35728, at *9.  Second, the Defendants' use of the marks in commerce is likely to cause consumer confusion, deception, or mistake. Indeed, Phoenix has blatantly copied 3M's marks and used them to market identical goods. (Comp'l. ¶ 28, Fig. 5.)  Use of identical marks on identical goods is likely to create the false or misleading impression that Phoenix's goods are manufactured or distributed by 3M, are associated or connected with 3M, or are sponsored or otherwise endorsed by 3M.  (*Id.* at ¶¶ 193,198. 202, 208.)   Thus, 3M has stated valid claims for trademark infringement and false designation of origin.

### C.   3M's Decision to Seek Equitable Relief Instead of Substantial Damages Supports Entry of Default Judgment (*Eitel* Factor 4)

3M seeks equitable relief and compensation for its costs in bringing this action in lieu of substantial damages, which weighs in favor of default judgment. Under the fourth *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of [the defendants'] conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d. 1172, 1176 (C.D. Cal. 2002).

Under the copyright laws, a plaintiff may recover (1) damages including defendant's profits (or alternatively, statutory damages), (2) costs of the action, and (3) attorneys' fees.  17 U.S.C. §§ 504-05. Similarly, under the patent laws, a plaintiff may recover (1) damages to compensate for infringement, (2) costs of the action, and in exceptional cases, attorneys' fees.  35 U.S.C. §§ 284-85.  Finally, under the Lanham Act, a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by plaintiff,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

and (3) the costs of the actions." 15 U.S.C. § 1117(a). When plaintiffs do not seek monetary damages, but instead seek injunctive relief against defendants' continued infringement of their intellectual property rights, as here, this factor weighs in favor of default judgment. *PepsiCo*, 238 F. Supp. 2d at 1177.

### D.    The Material Facts are not Disputed (*Eitel* Factor 5)

There is not and cannot be any reasonable dispute as to material facts.  The fifth *Eitel* factor requires consideration of "whether it is highly likely that there would be a dispute as to material facts."  *Kerr Corp.*, 2013 U.S. Dist. LEXIS 35728, at *13. "Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low." *Warner Bros*., 2013 U.S. Dist. LEXIS 156597, at *8 (citing *Landstar Ranger, Inc. v. Parth Enters*., 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010)). Here, 3M's is well-pleaded and Phoenix made no effort to properly respond. As such, this factor weighs in favor of default judgment.

Even if Phoenix had appeared in this action, it cannot reasonably dispute the fundamental facts of this case. 3M's intellectual property is a matter of public record. Moreover, the evidence of infringement—including blatant copying of 3M's patented products, verbatim copying of its copyright-protected marketing materials, and repeated use of 3M's trademark-protected names—comes from (1) Phoenix's own website and (2) videos demonstrating Phoenix's product and describing them as the same as 3M's products, except as to color.  (Comp'l. ¶ 29.) Moreover, K2 Concepts—a co-defendant and downstream customer of Phoenix—admitted that all of 3M's allegations regarding

13

patent infringement were true.  (*See* Dkt. 17.)   Because 3M does not seek damages (other than its attorney fees and costs), there can be no dispute as to the number of sales, proper royalty amount or lost profits causation. This factor weighs heavily in 3M's favor.

### E.   Defendant's Default was not Due to Excusable Neglect (*Eitel* Factor 6)

Under the sixth *Eitel* factor, the Court must assess whether Defendant's default was due to excusable neglect. This factor "favors default judgment when the defendant has been properly served." *Nat'l Photo*, 2014 U.S. Dist. LEXIS 195663, at *6. Here, Defendant was properly served with the Complaint on November 3, 2017, via personal service of its CEO, and thus has notice of this action, but has failed to answer. Jennings Decl. ¶¶ 6-7. Accordingly, this factor weighs strongly in favor of default judgment being entered against Phoenix.

### F.   The Policy Favoring Decision on the Merits Supports Default Judgment (*Eitel* Factor 7)

The final *Eitel* factor "indicates that, for public policy reasons, courts prefer to rule on the merits." *Kerr Corp.*, 2013 U.S. Dist. LEXIS 35728, at 14. But "[w]here the [d]efendant's failure to appear makes decision on the merits impossible, default judgment is appropriate." *Warner Bros.*, 2013 U.S. Dist. LEXIS 156597, at *9. Here, Phoenix was served with the Complaint, it failed to answer, and every other *Eitel* factor weighs in 3M's favor. As such, this Court should enter default judgment against Phoenix.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

## V.  3M IS ENTITLED TO NOMINAL DAMAGES, A PERMANENT INJUNCTION, AND ITS REASONABLE ATTORNEY FEES AND COSTS

3M's allegations of damages are not presumed to be true, so a court granting a motion for default judgment must "determine the amount and character of the relief" due. *Nat'l Photo*, 2014 U.S. Dist. LEXIS 195663, at *3 (citing *Landstar Ranger*, 725 F. Supp. 2d at 920). Here, the egregious and willful nature of Phoenix's conduct warrants entry of a permanent injunction, and an award of 3M's attorney fees and costs.

### A.    Permanent Injunction

3M respectfully requests that this Court grant permanent injunctive relief forbidding Phoenix from further infringement of its copyrights and trademarks.[2] "Injunctive relief is the remedy of choice for trademark cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see also* 15 U.S.C. § 1116(a) (authorizing injunctive relief to prevent further violations of trademark law under the Lanham Act); 17 U.S.C. § 501(a) (authorizing permanent injunctions to prevent further copyright violations). A court may grant permanent injunctive relief where the plaintiff has demonstrated: "(1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring [plaintiff]; and (4) an injunction will advance the public interest." *Hand &*

---

[2] 3M's patents expired on January 14, 2018, and therefore it is not seeking injunctive relief as to them.

15

*Nail*, 2017 U.S. Dist. LEXIS 59970, at *36-37 (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).

Here, 3M has established that Phoenix's actions warrant entry of a permanent injunction. As discussed above, with no challenges by Phoenix to any of the allegations in the Complaint, and one defendant (K2 Concepts) admitting that all of 3M's infringement allegations are true, 3M has shown actual success on the merits of each of its twelve claims. Further, 3M has suffered irreparable injury by way of its good will and reputation, and will continue to suffer if Phoenix is not permanently enjoined. *See, e.g.*, *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (finding that "[e]vidence of a loss of control over business reputation and damage to goodwill" may be sufficient to show irreparable harm); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (finding that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011) (finding irreparable harm due, in part, to plaintiff's loss of control over its reputation). Beyond injunctive relief, there is no adequate remedy that can address 3M's injuries—particularly because Phoenix's "default makes it impractical to determine monetary damages." *Warner Bros.*, 2013 U.S. Dist. LEXIS 156597, at *14-15. In addition, the balance of hardships weighs exclusively in 3M's favor—"[t]here is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with the law." *Deckers Outdoor Corp. v. Ozwear Connection Pty,*

16

*Ltd.*, No. 14-CV-2307, 2014 U.S. Dist. LEXIS 132169, *32 (C.D. Cal. Sept. 18, 2014). Finally, public interest favors issuance of a permanent injunction because it protects against the public "right not to be deceived or confused." *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008). Accordingly, all four factors weigh in favor of permanently enjoining Phoenix from continuing to infringe 3M's intellectual property.

**B.    Damages**

3M has suffered serious and substantial harm from Phoenix's blatant copying of its patented products, its trademarks, and its copyright-protected marketing materials. 3M, however, recognizes the challenge of obtaining accurate and complete information about sales and profits from entities that have refused to respond to all efforts to reach them, including a federal lawsuit. 3M believes that Phoenix has sold into the United States substantially more than the 12,000 units sold to co-defendant K2 Concepts.  But despite its substantial harm, 3M seeks only nominal damages in the amount of $1 at this time.

**C.    Attorney Fees and Costs**

3M is entitled to attorney fees and costs for this action, and requests the Court award an amount of $65,637.00 in attorney fees and costs of $10,515.39. 3M's patent, copyright, and trademark claims all provide the Court with the authority to grant attorneys' fees and costs in this matter. *See* 35 U.S.C. § 285 ("The court in exceptional [patent infringement] cases may award reasonable attorney fees to the prevailing

party."); 17 U.S.C. § 505 ("the court in its discretion may allow the recovery of full costs . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs" in a copyright infringement action); 15 U.S.C. § 1117(b) (upon a trademark violation under 15 U.S.C. § 1125(a), (c), or (d), "the plaintiff shall be entitled . . . to recover . . . the costs of the action," and "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party").

When determining whether to award attorney fees, the court may consider: "(1) frivolousness; (2) motivation; (3) objective unreasonableness both in the factual and legal components of the case; (4) and the need in particular circumstances to advance the dual goals of compensation and deterrence." *Twentieth Century Fox Film Corp. v. Entertainment Dist.*, 429 F.3d 869, 883 (9th Cir. 2005). Here, these factors all weigh in favor of awarding 3M its attorney fees. This action is not frivolous and is motivated by 3M's desire to enforce its intellectual property rights. The factual and legal components of the case are reasonable, and as established above, 3M's well-pleaded Complaint states valid claims. Finally, given Phoenix's blatant infringement and disregard for 3M's intellectual property rights, an award of attorney fees will not only compensate 3M for the necessity of this action but also deter Phoenix from further infringement. Moreover, the Ninth Circuit has found a case "exceptional"—and therefore warranting an award of attorney fees—where, as here, the case stemmed from the defendant's "malicious, fraudulent, deliberate, or willful" infringement. *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 826 (9th Cir. 1997). Similarly, courts within this judicial district have

18

recognized that a "case may also be deemed 'exceptional'—and merit an award of attorney fees under the Lanham Act—when a defendant disregards the proceedings and does not appear," as is the case here. *Philip Morris USA Inc. v. Banh*, No. CV 03-4043 GAF (PJWx), 2005 U.S. Dist. LEXIS 43113, at *24 (C.D. Cal. Jan. 14, 2005) (citations omitted). Accordingly, the Court should find that attorney fees are appropriate here.

The fees 3M seeks are reasonable, and should be granted. After determining that attorney fees are warranted, the analysis shifts to whether the requested fees are "reasonable." *Nat'l Photo*, 2014 U.S. Dist. LEXIS 195663, at *10 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The most useful starting point for determining the amount of reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Fees calculated by this formula—known as the lodestar calculation—are "presumptively reasonable." *Nat'l Photo*, 2014 U.S. Dist. LEXIS 195663, at *10 (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)) (internal quotation omitted). When making the lodestar calculation, the reasonable hourly rate may be established by declaration from plaintiff's counsel, *United Steelworkers of Amer. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990), and "the relevant community is [the] one in which the district court sits," *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 907 (9th Cir. 1995) (citation omitted).

The Court has the discretion to award attorney fees that exceed the schedule upon written request by the plaintiff. L.R. 55-3; *see also Nat'l Photo*, 2014 U.S. Dist. LEXIS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

195663, at *11. For instance, in *Nat'l Photo*, this Court granted a written request for attorney fees and awarded twice the amount of fees called for by the L.R. 55-3 schedule, finding that plaintiff's prosecution of the case furthered the purposes of the Copyright Act and that the fees awarded were reasonable in the Southern California legal community. 2014 U.S. Dist. LEXIS 195663, at *11-13.

Other courts in this judicial district have similarly exceeded the amount prescribed by L.R. 55-3 when awarding attorney fees for cases involving intellectual property after default judgment. *See, e.g*., *Aiuppy v. Set Glob. Inc*., No. CV 13-07198 DDP (PJWx), 2015 U.S. Dist. LEXIS 135637, at *5 (C.D. Cal. Oct. 5, 2015) (awarding attorneys' fees over forty times higher than the L.R. 55-3 schedule, and "pointing to the purposes of the Copyright Act to encourage copyright owners to enforce their copyrights even in light of small damages awards."); *Langer v. Elsinore Pioneer Lumber Co*., No. 2:14-CV-08293-ODW-PLAx, 2015 U.S. Dist. LEXIS 12015, at *12-13 (C.D. Cal. Jan. 30, 2015) (awarding attorneys' fees in excess of the L.R. 55-3 schedule).

Courts in this judicial district have awarded substantial fees in intellectual property cases, including a recent grant of $33,588.40 in attorney fees resulting from a similar case involving multiple types of intellectual property. *See Sigma Enterprises, LLC v. Alluring Deals LLC*, No. 8:17-CV-1074 (C.D. Cal. Dec. 15, 2017). Similarly, the Southern District of California recently awarded attorney fees nearly six times higher than the amount sought here, for an unusually complex trademark case. *LG Elecs.*

20

*Mobile Comm U.S.A., Inc. v. Xiaowen*, No. 3:16-CV-1162, 2017 U.S. Dist. LEXIS 143409, at *12 (S.D. Cal. Sept. 5, 2017) (awarding $383,134.35 in attorney fees for trademark action). 3M's fees in this action—enforcing multiple trademark, patent, and copyright rights—are reasonable and appropriate given the complexity of the case.

3M's request for attorney fees higher than the default amount provided in the Local Rules is particularly appropriate, because it is not seeking other monetary relief. Rather than seeking a large sum from Phoenix for damages, 3M seeks only injunctive relief preventing Phoenix from continuing its infringement, and 3M's cost of enforcing its rights. It would be an unfair windfall to Phoenix, and unfair injury to 3M, if attorney fees were limited to the amount in the Local Rules, which is calculated based on the damage award, when the inability to calculate full damages is attributable to Phoenix's failure to respond or comply with federal process.

3M's attorney fees in this action are reasonable and appropriate based on the complexity and challenges of this case. This case was made considerably more costly and difficult due to Phoenix's actions, including its blatant and wholesale violation of numerous independent intellectual property rights. Moreover, this case is not a typical case involving one statute. It involves three types of intellectual property: seven patents, two registered trademarks, and a copyright. 3M's attorney fees in this action were considerably increased by the difficulty in serving Phoenix, due in part to its failure to register properly with the Secretary of State before doing business in California. *See* CAL. CORP. CODE § 17708.02. Phoenix's failure to designate a required agent for service

of process, caused 3M to spend hours of research and substantial translation costs to prepare and serve documents through the Hague Service Convention and respond to the Court's inquiry to extend the time for service.  *See* Jennings Dec'l., ¶ 4. 3M estimates that its attorney fees were increased at least 20% due to the difficulty in serving Phoenix.

As described further in the Kahn declaration, the case staffing and task assignments were made with an emphasis on efficiency and cost-effectiveness. Kahn Decl. ¶¶ 9-10. Because the only substantial monetary relief 3M seeks is its attorney fees, it should be compensated in full for the amount it was forced to spend to defend its rights.  It would be inequitable to allow Phoenix to profit from its actions, when the increased legal fees are due to Phoenix's failure to register its company in California and its wholesale infringement of numerous intellectual property rights. Phoenix's refusal to acknowledge or abide by 3M's rights or to respond to this lawsuit renders it impractical if not impossible to obtain sufficient information to support a separate damage award based on a royalty or lost profits.

## VI.   CONCLUSION

For the foregoing reasons, 3M respectfully requests that the Court order default judgment against Defendant, award $1 in damages, enter a permanent injunction against Defendants, and award $65,637.00 in attorneys' fees and $10,515.39 in costs.

Dated: February 20, 2018

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: */s/ Romeao Jennings*
Romeao Jennings (SBN 281568)
rjennings@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA 92614
Tel:   949-885-4100
Fax:   949-885-4101

Michael Kahn (admitted *pro hac vice*)
mkahn@akingump.com
One Bryant Park
New York, NY
Tel:   212-872-1000
Fax:   212-872-1002

***Counsel for Plaintiffs' 3M Company and 3M Innovative Properties Company***

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**