UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3M COMPANY; and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>             Plaintiffs,<br><br>   v.<br><br>PHOENIX AUTOMOTIVE REFINISHING CO., LTD.; and K2 CONCEPTS,<br><br>          Defendants. | ) CV 17-00649-RSWL-DTB<br>)<br>)<br>)<br>) **ORDER re: Plaintiffs'**<br>) **Motion for Default**<br>) **Judgment Against**<br>) **Defendant Phoenix**<br>) **Automotive Refinishing**<br>) **Co., Ltd.** [28]<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

This Action arises from Defendants K2 Concepts ("K2 Concepts") and Phoenix Automotive Refinishing Co., Ltd.'s ("Phoenix") alleged infringement on Plaintiffs 3M Company and 3M Innovative Properties Company's (collectively, "Plaintiffs") patents, trademarks, and copyright.  Currently before the Court is Plaintiffs' Motion for Default Judgment ("Motion") [28] against Phoenix as to all claims.  For the reasons set forth

1

below, the Court **GRANTS** Plaintiffs' Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are the "leading innovator[s] of products improving the preparation, consumption, and cleanup of paint and other liquids used in spray guns." Compl. ¶ 1, ECF No. 1. One of these innovations includes a paint preparation system ("PPS"). <u>Id.</u> PPS consists of "a disposable liner and lid with a built-in filter that improves and simplifies the mixing, use, and cleanup required when painting with a gravity-fed spray gun." <u>Id.</u> The United States Patent and Trademark Office has granted Plaintiffs several patents related to this technology and has issued two trademarks related to the PPS mark. <u>Id.</u>, Exs. B-J. Further, Plaintiffs have copyrighted certain photos used in their marketing materials. <u>See id.</u> ¶ 2, Ex. A. Plaintiffs expended significant resources in developing the PPS technology, obtaining the intellectual property rights described above, and educating members of the industry about this product. <u>Id.</u> ¶ 19.

Phoenix is a Chinese company with its principal place of business in China. <u>Id.</u> ¶ 7. Phoenix has been selling and advertising knock-off copies of Plaintiffs' PPS technology, thereby infringing on Plaintiffs' intellectual property rights. <u>Id.</u> ¶¶ 2, 4. Phoenix began advertising its knock-off PPS lids and liners in March 2016, and the advertisements included a

copyrighted image taken directly from Plaintiffs'
marketing materials and Plaintiffs' PPS and 3M
trademarks.  Id. ¶¶ 22-28.  Phoenix also uploaded
videos of its American customer, K2 Concepts,
demonstrating use of Phoenix's knock-off PPS system.
Id. ¶¶ 29-30.  In one video, K2 Concepts claims that
"the only difference between the 3M™ PPS™ products and
K2 cups is that 'the originals are blue, [and] the K2
cups are clear, but still 125 micron [filter].'"  Id.
¶ 30.

     In October and November 2016, both Plaintiffs and
Phoenix attended the Specialty Equipment Market
Association ("SEMA") trade show in Las Vegas, Nevada.
Id. ¶¶ 42-43.  While there, Plaintiffs observed Phoenix
demonstrating samples of the knock-off PPS products to
a potential customer.  Id. ¶ 44.  Plaintiffs'
representative asked to see a sample of the product,
and although initially stating that Phoenix does not
sell those products in the United States due to
Plaintiffs' patents, Phoenix eventually revealed a
sample of an infringing product from under the display.
Id. ¶¶ 45-46.  Despite Phoenix's initial assertions to
the contrary, public importation records show that
Phoenix has in fact sold at least 12,000 of the knock-
off products inside the United States to K2 Concepts.
Id. ¶ 33.

**B.   Procedural Background**

     Plaintiffs brought the instant Action [1] on April

3

5, 2017 against Phoenix and K2 Concepts for seven counts of patent infringement, one count of copyright infringement, two counts of trademark infringement, and two counts of false designation of origin. On April 27, 2017, the Court entered a Consent Judgment [18] as to K2 Concepts, holding that K2 Concepts infringed on Plaintiffs' patents and enjoining it from further use of the knock-off product. Then, on July 12, 2017, the Court issued an Order to Show Cause [21] re lack of prosecution as to Phoenix. Plaintiffs responded [22], noting that Plaintiffs attempted to serve Phoenix through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") and were awaiting a response. Plaintiffs eventually personally served Phoenix's CEO at the SEMA trade show in Las Vegas, Nevada, but Phoenix nevertheless has failed to appear in this Action. Decl. of Romeao Jennings in Supp. of Pls.' Mot. for Default J. ("Jennings Decl.") ¶¶ 6-7, ECF No. 28-2. The Clerk entered default against Phoenix [26] on January 8, 2018. Plaintiffs then filed the instant Motion [28] on February 20, 2018. Phoenix did not oppose, and Plaintiffs did not reply.

## II. DISCUSSION

### A. <u>Legal Standard</u>

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant default judgment. Pursuant to Local Rule 55-1, the party moving for

default judgment must submit a declaration establishing: (1) when and against which party default was entered; (2) on which pleading default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) proper service.  Upon default, all factual allegations in the complaint, except those relating to damages, are assumed to be true.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion to grant default judgment, the court must consider the following factors: (1) possibility of prejudice to the plaintiff, (2) merits of the substantive claim, (3) sufficiency of the complaint, (4) sum of money at stake, (5) possibility of disputes regarding material facts, (6) whether excusable neglect caused the default, and (7) the strong policy favoring decisions on the merits. NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).  Additionally, if the defaulting party failed to plead or otherwise defend, the court must determine that it has subject matter and personal jurisdiction.  In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).  When default judgment is granted, the relief awarded "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R.

Civ. P. 54(c).

**B.   <u>Analysis</u>**

    1.   <u>Jurisdiction</u>

    Before entering default judgment against Phoenix, the Court finds that it has jurisdiction over the subject matter and Phoenix.  First, subject matter jurisdiction exists, as Plaintiffs' claims arise under federal law, i.e., the Patent Act, Copyright Act, and Lanham Act.  <u>See</u> 18 U.S.C. § 1331.  Second, the Court has personal jurisdiction over Phoenix under the rules for minimum contacts and service.  Specifically, Phoenix's minimum contacts with California include importation and sale of products here and relationships with distributors and users here, and these contacts give rise to the present claims.  Compl. ¶ 11; <u>see</u> <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984) ("In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" (quotation omitted)).  Additionally, Plaintiffs personally served Phoenix on November 3, 2017 in conformance with Rule 4(h)(1).  <u>See</u> Proof of Service, ECF No. 24.

    2.   <u>Local Rule 55-1</u>

    Plaintiffs complied with Local Rule 55-1.  The Clerk entered default against Phoenix as to the Complaint on January 8, 2018.  Jennings Decl. ¶¶ 7, 10.  Also, Phoenix is not an "infant, incompetent person, or a person in the military service within the meaning of

the Servicemembers Civil Relief Act (50 U.S.C. § 521)." Id. ¶ 8.  Lastly, Phoenix was properly served on November 3, 2017.  Id. ¶ 6.

   3.   Eitel Factors

   The Eitel factors weigh in favor of default judgment as to all claims.

      a.  *Factor 1: Prejudice to Plaintiffs*

   The first Eitel factor concerns whether a plaintiff will suffer prejudice if a default judgment is not entered.  Plaintiffs contend that they will be "prejudiced greatly" without a default judgment against Phoenix.  Pls.' Mot. for Default J. ("Mot.") 7:8, ECF No. 28-1.  Indeed, Phoenix's "past misconduct"—namely, its infringement—"and current failure to litigate" indicate that Phoenix is "highly unlikely to correct past misbehavior" absent a default judgment.  Kerr Corp. v. Tri Dental, Inc., Case No. SACV 12-0891 DOC (CWx), 2013 U.S. Dist. LEXIS 35728, at *7 (C.D. Cal. Mar. 11, 2013).  As such, Plaintiffs "will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered."  Id. (quoting Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003)).  Additionally, Plaintiffs are likely to suffer prejudice since they have "no other means to collect compensation from [Phoenix], leaving Plaintiff[s] without a proper remedy absent default judgment."  Warner Bros. Home Entm't, Inc. v. Slaughter, CV 13-0892-DOC (RNBx), 2013

U.S. Dist. LEXIS 156597, at *6 (C.D. Cal. Oct. 30, 2013).  As such, this factor favors entry of default judgment.

b. *Factors 2 & 3: Sufficiency of the Complaint and Merits of the Claims*

The second and third Eitel factors involve the merits of the plaintiff's substantive claims and the sufficiency of the complaint.  "Under an Eitel analysis, [these factors] are often analyzed together" in that they both require that the allegations "state a claim on which the [plaintiff] may recover." DR JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) (quoting Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).  Plaintiffs have pled meritorious claims for (1) patent infringement under 35 U.S.C. § 271, (2) copyright infringement under 17 U.S.C. § 501, and (3) trademark infringement and false designation of origin under the Lanham Act.

i. *Patent Infringement*

Under 35 U.S.C. § 271(a), direct patent infringement occurs where a defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention."  Here, according to the Complaint, in 2016, Phoenix began advertising knock-off versions of Plaintiffs' products for sale, these products were advertised as being identical to Plaintiffs' patented PPS system except for

the color, and Phoenix sold at least 12,000 units of the knock-off PPS systems to a customer in the United States (i.e., K2 Concepts).  See Compl. ¶¶ 22-23, 29, 31, 33.  Thus, Plaintiffs sufficiently assert a claim for direct patent infringement.

Under 35 U.S.C. § 271(b), indirect patent infringement occurs where a defendant "actively induces infringement of a patent."  To establish such claim, the plaintiff must show "(1) an act by the defendant knowingly intended to induce another to infringe, and (2) actual infringement by the third party induced thereby."  TZU Techs., LLC v. Happy Haptics, Inc., LA CV15-05500 JAK (JPRx), 2016 U.S. Dist. LEXIS 186473, at *7 (C.D. Cal. Nov. 23, 2016) (quoting Cybiotronics, Ltd. v. Golden Source Elecs. Ltd., 130 F. Supp. 2d 1152, 1165 (C.D. Cal. 2001)).  The plaintiff must prove that the defendant "specifically intended [its] customers to infringe the [plaintiff's p]atent and knew that the customer's acts constituted infringement."  Id. (quoting In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

With respect to the second element, Plaintiffs have alleged that K2 Concepts actually infringed upon all seven of the patents in suit.  See Compl. ¶¶ 87, 101, 117, 133, 146, 161, 174.  As to the first element, Plaintiffs allege that Phoenix was aware of Plaintiffs' patents.  See Compl. ¶ 45.  Further, Plaintiffs allege

that Phoenix created a copycat product marketed as "direct replacements" to Plaintiffs' patented products, "used copyrighted 3M photos and the PPS Marks in its marketing materials," and sold its copycat product to K2 Concepts. Id. ¶¶ 2, 22, 28-29, 33, 38. Thus, Plaintiffs successfully assert that Phoenix knew and specifically intended that K2 Concepts would infringe on Plaintiffs' patents. As a result, Plaintiffs have a claim for indirect patent infringement.

### ii. *Copyright Infringement*

"There are only two elements necessary for a copyright owner to make out a prima facie case of copyright infringement: (1) ownership of the copyright by the plaintiff; and (2) copying by the defendant." Lamb v. Starks, 949 F. Supp. 753, 756 (N.D. Cal. 1996) (citing Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1151 (9th Cir. 1986)) (emphasis omitted). Plaintiffs allege and show ownership of the copyright. See Compl. ¶ 26, Ex. A. Additionally, Plaintiffs allege and show that Phoenix copied the copyrighted materials. See id. ¶¶ 22-25. Thus, Plaintiffs sufficiently established a case for copyright infringement.

### iii. *Trademark Infringement and False Designation of Origin*

"To prove a claim of trademark infringement, a plaintiff must show: (1) that it has a valid, protectable trademark, and (2) that defendant's use of

the mark is likely to cause confusion." <u>Kythera</u>
<u>Biopharmaceuticals, Inc. v. Lithera, Inc.</u>, 998 F. Supp.
2d 890, 898 (C.D. Cal. 2014) (citing <u>Applied Info.</u>
<u>Scis. Corp. v. eBay, Inc.</u>, 511 F.3d 966, 969 (9th Cir.
2007); <u>Reno Air Racing Ass'n, Inc. v. McCord</u>, 452 F.3d
1126, 1134 (9th Cir. 2006)). Additionally, "[a] claim
for false designation of origin under 15 U.S.C. § 1125
requires proof of the same elements as a claim for
trademark infringement under 15 U.S.C. § 1114." <u>Id.</u> at
897 (citing <u>Brookfield Commc'ns, Inc. v. W. Coast</u>
<u>Entm't Corp.</u>, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999)).
Accordingly, the Court analyzes these causes of action
together.

First, Plaintiffs have shown valid, protectable
trademarks, i.e., U.S. Registration Numbers 2,861,036
and 4,156,991. <u>See</u> Compl. ¶ 1, Exs. I, J; <u>Brookfield</u>
<u>Commc'ns</u>, 174 F.3d at 1047 (concluding that
registration of a mark "constitutes prima facie
evidence of the validity of the registered mark and of
[the plaintiff's] exclusive right to use the mark"). 
Second, Plaintiffs allege that Phoenix used Plaintiffs'
PPS marks to advertise its knock-off product, <u>see</u>
Compl. ¶ 2, and that this is likely to cause confusion
as to whether these products are connected to
Plaintiffs, <u>see</u> <u>id.</u> ¶¶ 192, 197, 202, 208. Therefore,
Plaintiffs sufficiently established a claim for
trademark infringement and false designation of origin.
///

c. *Factor 4: Money at Stake*

The fourth <u>Eitel</u> factor encompasses the sum of money at stake in relation to the defendant's conduct. Under 17 U.S.C. § 504, a copyright infringer is liable for either "actual damages and any additional profits" or statutory damages, costs, and under 17 U.S.C. § 505, attorneys' fees are discretionary. Additionally, under 35 U.S.C. §§ 284-285, a patent infringer is liable for "damages adequate to compensate for the infringement," costs and interest, and, in "exceptional cases," attorneys' fees. Finally, under 15 U.S.C. § 1117(a), a trademark infringer is liable for "(1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action," and, in "exceptional cases," attorneys' fees.

In the instant case, Plaintiffs seek injunctive relief in lieu of monetary damages. <u>See</u> Mot. 13:1-4. The only monetary relief that Plaintiffs seek is $1 in nominal damages, attorneys' fees in the amount of $65,637, and costs in the amount of $10,515.39. <u>See</u> <u>id.</u> at 22:17-19. Thus, this factor favors default judgment. <u>See, e.g.</u>, <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (finding that this factor favored default judgment where plaintiffs sought "only injunctive relief from the continued use of their trademarks on [d]efendant's counterfeit products").

///

d.  *Factor 5: Dispute of Material Fact*

The fifth Eitel factor considers whether it is
likely that there would be a dispute as to material
facts.  "Where the [p]laintiff's complaint is well-
pleaded and the defendant makes no effort to properly
respond, the likelihood of disputed facts is very low."
Warner Bros., 2013 U.S. Dist. LEXIS 156597, at *8.
Here, as discussed, Plaintiffs' Complaint is well-
pleaded.  Further, Phoenix has made no effort to
respond.  Jennings Decl. ¶ 7.  Thus, this factor weighs
in favor of default judgment.

e.  *Factor 6: Excusable Neglect*

Under the sixth Eitel factor, courts consider
whether the defendant's default was due to excusable
neglect.  This factor favors default judgment because
Phoenix was properly served on November 3, 2017 via
personal service on its CEO.  Jennings Decl. ¶¶ 6-7;
see Nat'l Photo Grp., LLC v. Pier Corp., Case No. SACV
13-1165-DOC (JPRx), 2014 U.S. Dist. LEXIS 195663, at *6
(C.D. Cal. Mar. 10, 2014) (citation omitted).

f.  *Factor 7: Public Policy*

The seventh Eitel factor requires consideration of
the strong public policy favoring decisions on the
merits.  However, "[w]here the [d]efendant's failure to
appear makes decision on the merits impossible, default
judgment is appropriate."  Warner Bros., 2013 U.S.
Dist. LEXIS 156597, at *9 (citing Craigslist, Inc. v.
Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D.

Cal. 2010)).  Here, despite notice of the lawsuit,
Phoenix has failed to answer.  Jennings Decl. ¶¶ 6-7.
As such, a decision on the merits is impossible, and
this factor favors default judgment.

4.  <u>Relief</u>

Before entry of default judgment, plaintiffs must
"prove up" the relief they seek.  <u>Vogel v. Rite Aid
Corp.</u>, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014)
(quotations omitted).

a.  *Permanent Injunction*

A court may not grant a permanent injunction unless
the plaintiff satisfies a four-factor test.  <u>eBay Inc.
v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).
Specifically, the plaintiff must show: (1) irreparable
injury; (2) inadequate remedy at law; (3) the balance
of hardships between the plaintiff and defendant tips
in favor of an equitable remedy; and (4) a permanent
injunction would not harm the public interest.  <u>Id.</u>
Plaintiffs here meet this test.

As to the first factor, Plaintiffs have suffered
injury to their goodwill and reputation.  Mot. 16:7-8.
This kind of injury is irreparable.  <u>See</u> <u>Herb Reed
Enters., LLC v. Fla. Entm't Mgmt., Inc.</u>, 736 F.3d 1239,
1250 (9th Cir. 2013) ("Evidence of loss of control over
business reputation and damage to goodwill could
constitute irreparable harm."); <u>Stuhlbarg Int'l Sales
Co., Inc. v. John D. Brush & Co., Inc.</u>, 240 F.3d 832,
841 (9th Cir. 2001) ("Evidence of threatened loss of

prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

As to the second factor, Phoenix's default leaves Plaintiffs with no adequate remedy at law. Mot. 16:16-18; see Warner Bros. Home Entm't v. Jimenez, Case No. CV 12-9160 FMO (JEMx), 2013 WL 3397672, at *20 (C.D. Cal. July 8, 2013) (noting that "monetary damages alone are inadequate to compensate plaintiff because defendant's refusal to participate in the action makes it impossible for plaintiff to determine defendant's actual profits, the amount of lost income as a result of defendant's conduct, or take any action to prevent further infringement").

As to the third factor, "[t]here is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law." Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd., CV 14-2307 RSWL (FFMx), 2014 WL 4679001, at *32 (C.D. Cal. Sept. 18, 2014). Here, the requested injunction would prevent future infringement on Plaintiffs' copyright and trademarks.[1] Mot. 15:8-9. Thus, the balance of hardships weighs in Plaintiffs' favor.

Finally, as to the fourth factor, Plaintiffs assert that a permanent injunction is in the public interest. Mot. 17:2-3. For trademark infringement cases, this

---

[1] Plaintiffs maintain they are not seeking injunctive relief as to their patents, which expired on January 14, 2018. Mot. 15 n.2.

factor involves the public's right "not to be deceived or confused." <u>Moroccanoil, Inc. v. Moroccan Gold, LLC</u>, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) (quoting <u>Opticians Ass'n of Am. v. Indep. Opticians of Am.</u>, 920 F.2d 187, 198 (3d Cir. 1990)).

In sum, a permanent injunction is warranted.

b. *Attorneys' Fees and Litigation Costs*

In trademark, copyright, and patent cases, courts have discretion to award attorneys' fees and costs to the prevailing party. <u>See</u> 15 U.S.C. § 1117(a); 17 U.S.C. § 505; 35 U.S.C. §§ 284, 285.

i. *Fees in Copyright Cases*

In determining whether to award attorneys' fees to the prevailing party under the Copyright Act, "[t]here is no precise rule or formula . . . [,] but instead equitable discretion should be exercised in light of [certain] considerations." <u>Fogerty v. Fantasy</u>, 510 U.S. 517, 534 (1994) (internal quotation marks and quotation omitted). These considerations include, but are not limited to, the following factors: (1) frivolousness, (2) motivation, (3) objective unreasonableness (both factually and legally), (4) the need under the circumstances for compensation and deterrence, (5) the degree of success obtained, (6) the Copyright Act's purposes, and (7) the chilling effect or inequitable burden of attorneys' fees on an impecunious plaintiff. <u>Perfect 10, Inc. v. Giganews, Inc.</u>, 847 F.3d 657, 675 (9th Cir. 2017) (quotations

16

omitted).  These factors "need not all be met."  <u>Id.</u>
(quotation omitted).

As discussed, Plaintiffs established valid claims
for copyright infringement, which shows their claims
were not frivolous or objectively unreasonable.
Additionally, Plaintiffs were motivated to assert valid
claims to protect their intellectual property.  The
deterrence factor is also satisfied, as attorneys' fees
"serve the [Copyright Act's] purpose of encouraging
private enforcement and deterring infringements."
<u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 886
F.2d 1545, 1556 (9th Cir. 1989).  Moreover, their
success furthers the purpose of the Copyright Act.  <u>See</u>
<u>Perfect 10</u>, 847 F.3d at 675 (quoting <u>Fogerty</u>, 510 U.S.
at 527).  Accordingly, attorneys' fees are warranted.
<u>See also</u> <u>Frank Music</u>, 886 F.2d at 1556 ("Plaintiffs in
copyright actions may be awarded attorney's fees simply
by virtue of prevailing in the action." (citations
omitted)).

ii. *Fees in Trademark and Patent Cases*

Generally, a trademark infringement case is
considered exceptional, and therefore warrants an award
of attorneys' fees, where the defendant maliciously,
fraudulently, deliberately, or willfully infringes.
<u>Stephen W. Boney, Inc. v. Boney Servs.</u>, 127 F.3d 821,
825-26 (9th Cir. 1997) (quotation omitted).
Additionally, a defendant's disregard of the
proceedings and failure to appear may make the case

exceptional.  <u>Discovery Commc'ns, Inc. v. Animal</u>
<u>Planet, Inc.</u>, 172 F. Supp. 2d 1282, 1292 (C.D. Cal.
2001) (citation omitted); <u>see also</u> <u>Hawaii Carpenters'</u>
<u>Tr. Funds v. Stone</u>, 794 F.2d 508, 512 (9th Cir. 1986)
(affirming default judgment award of attorneys' fees
and costs where defendant failed to appear).  With
respect to patent infringement, attorneys' fees are
available in "exceptional" cases (i.e., "one that
stands out from other with respect to the substantive
strength of a party's litigating position . . . or the
unreasonable manner in which the case was litigated").
<u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 134
S. Ct. 1749, 1756 (2014) (comparing such cases to those
under the Copyright Act).

Here, Plaintiffs successfully established that
Phoenix's infringement was malicious, fraudulent,
deliberate, or willful.  In fact, Phoenix was aware of
Plaintiffs' patents.  <u>See</u> Compl. ¶ 45.  Further,
Phoenix created a copycat product marketed as "direct
replacements" to Plaintiffs' products, "used
copyrighted 3M photos and the PPS Marks in its
marketing materials," and marketed the knock-off
products with Plaintiffs' trademarks.  <u>Id.</u> ¶¶ 2, 22,
28, 38.  Additionally, Phoenix certainly disregarded
these proceedings.  As such, this case is exceptional,
and attorneys' fees are an appropriate remedy.

    iii.  *Reasonableness of Fees*

When awarding attorneys' fees, the court "must

first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." <u>Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.</u>, 668 F.3d 677, 689 (9th Cir. 2012) (quotation omitted).  The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that [the] requested [hourly] rates [were] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Grove v. Wells Fargo Fin. Cal., Inc.</u>, 606 F.3d 577, 583 (9th Cir. 2010) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).  The fee applicant also bears "the burden of documenting the appropriate hours expended in the litigation" and of "submit[ting] evidence in support of those hours worked." <u>USW v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.</u>, 512 F.3d 555, 565 (9th Cir. 2008) (quotation omitted).

Here, Plaintiffs seek attorneys' fees based on the work of Michael Kahn, Romeao Jennings, and Sakura Toyama.  Decl. of Michael Kahn in Supp. of Pls.' Mot. for Default J. ("Kahn Decl.") ¶¶ 4-6, ECF No. 28-3. Mr. Kahn is a partner at Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") who has been practicing law since 2002 and billed this matter at an hourly rate of $790. <u>Id.</u> ¶ 4.  Mr. Jennings is counsel for Akin Gump, who has been practicing since 2011 and billed at an hourly

rate of $580.  _Id._ ¶ 5.  Mrs. Toyama, a senior
paralegal specialist at Akin Gump, has worked on
intellectual property cases for over thirteen years,
and her hourly rate was $260.  _Id._ ¶6.  These rates are
comparable to rates the Central District has previously
approved for attorneys with similar skill and
experience in Los Angeles.  _See, e.g._, _Perfect 10, Inc._
_v. Giganews, Inc._, CV 11-07098-AB (SHx), 2015 WL
1746484, at *20-21 (C.D. Cal. Mar. 24, 2015) (finding
reasonable hourly fees in intellectual property case
for partners from $610 to $930, for associates from
$360 to $690, and for paralegals from $240 to $345).

Plaintiffs additionally satisfied their burden of
demonstrating that the hours were appropriate.  For
instance, Plaintiffs claimed infringement of seven
patents, two trademarks, and a copyright.  Kahn Decl.
¶ 13.  Serving Phoenix also required more hours than
usual, as Phoenix failed to properly register with the
Secretary of State before doing business in California.
_Id._ ¶ 14.  Without Phoenix's registered agent for
service of process, Plaintiffs needed to spend hours
researching how to serve Phoenix through the Hague
Convention (before ultimately being able to personally
serve Phoenix's CEO).  _Id._, Ex. A.

Accordingly, the attorneys' fees of $65,637 sought
here are reasonable.

iv. _Litigation Costs_

The Copyright Act provides that a court has

discretion to award "full costs." <u>Identity Arts v. Best Buy Enter. Servs. Inc.</u>, No. C 05-4656 PJH, 2008 WL 820674, at *9 (N.D. Cal. Mar. 26, 2008). Plaintiffs seek to recover $10,515.39 in costs, including filing and service fees and translation costs for service under the Hague Convention. Kahn Decl., Ex. A.

As such, the Court **GRANTS** the request for attorneys' fees and costs.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion for Default Judgment Against Phoenix in its entirety.

**IT IS SO ORDERED.**

DATED: April 25, 2018          <u>s/ RONALD S.W. LEW</u>

                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge